**Gary PARKER, Appellant,**

v.

**Gerald L. CAMP; Marjorie Long; Clarence Helmsing; and James W. Anglin, Appellees.**

No. 17A03–9503–CV–81.

Court of Appeals of Indiana.

Oct. 26, 1995.

J. Bryan Nugen, Mefford and Carpenter, P.C., Auburn (John Martin Smith, of counsel), for appellant.

Michael L. Morrissey, Angola, John M. Haecker, Grimm & Grimm, Auburn, for appellees.

## OPINION

GARRARD, Judge.

This lawsuit arises from a default on a land contract. Gerald L. Camp, the seller, was awarded forfeiture of the contract. Gary Parker, who claimed an interest in the property, appeals.

### FACTS

Camp owned a bar known as the Shamrock in Waterloo, Indiana. On February 13, 1990, he sold the bar, including the land, all improvements and business assets, and agreed to assign the alcoholic beverage permit to Marjorie Long for $115,000. The parties signed both a contract for conditional sale of real estate and a contract of sale. Both documents provided that the balance would

be due on a balloon payment in February of 1992. Both contracts further required Camp's consent to any assignment of Long's interest. However, on February 13, 1990, without Camp's knowledge or consent, Long purported to assign her interest in both contracts to Shamrock Country Corporation, Inc. (Shamrock, Inc.), a corporation which did not come into existence until February 16, 1990.

Parker obtained nearly all of the stock in Shamrock, Inc. and, based upon a forged consent to assignment, believed that the corporation possessed Long's interest in the contracts with Camp. Parker then entered into an agreement with James Anglin and Clarence Helmsing on April 24, 1991, to sell to them the stock, business assets and real estate. This contract provided for a balloon payment in April of 1992.

Monthly payments on the Camp–Long contract were initially made by Long. However, Long eventually stopped making payments, and Camp subsequently accepted numerous payments from Parker. Although the balloon payment on the Camp–Long contract was due in February of 1992, this payment was not made. Under the contract for conditional sale of real estate, paragraph 9.043 stated: "The parties agree that after Buyer has paid seventy-five percent (75%) of the purchase price ... Buyer shall have substantial equity in the Real Estate." (R. 311). Under the contract, the seller had the right to pursue the remedy of forfeiture until the buyer had substantial equity in the real estate.

Camp brought the present action for forfeiture or, alternatively, foreclosure against Long and any parties in possession, named as John Doe defendants. Long failed to enter an appearance in the lawsuit. Shamrock, Inc., Parker, Anglin and Helmsing eventually joined as parties, and Parker filed a cross-claim against Anglin and Helmsing for their default on the second contract. On June 19, 1992, Camp recovered possession of the real estate by order of the court.

Following a bench trial, the court entered findings of fact and conclusions of law. The court found that 42.8% of the purchase price had been paid, but that, under the terms of the contract, this did not constitute substantial equity. Therefore, the court ordered that Camp's remedy was forfeiture as opposed to foreclosure.[1]

## DISCUSSION

■ Parker raises several issues for our review; however, we decide this case based upon the unenforceability of the contract's forfeiture provision.[2]

■ On its own motion, the trial court made specific findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A). Since there is no record of the parties filing a written request for specific findings, we will review the case as one decided on a general judgment with respect to those issues which are not covered by the findings. *Fowler v. Campbell* (1993), Ind.App., 612 N.E.2d 596, 600. We will affirm a general judgment upon any theory supported by the evidence. *Manor v. Statesman Ins. Co.* (1993), Ind. App., 612 N.E.2d 1109, 1112–13, *trans. denied.*

■ In reviewing findings of fact and conclusions of law, we first determine whether the evidence supports the findings and, second, whether the findings support the judgment. *Plummer & Co., Inc. v. Cole* (1993), Ind.App., 613 N.E.2d 481, 483. The judgment will be reversed only when clearly erroneous, i.e., when the judgment is unsupported by the findings of fact. *Id.* Findings of fact are clearly erroneous when the record lacks any evidence or reasonable inferences

---

1. Parker does not raise any error in the trial court's judgment finding that the contract between Shamrock, Inc. and Anglin and Helmsing is unenforceable; thus, we do not address this portion of the court's ruling.

2. Camp asserts that, pursuant to the nonassignment clauses in the contracts, Parker had no legal interest upon which to base his claim. However, the evidence showed that Camp ac-

cepted several payments from Parker on the contracts. Further, correspondence between Camp's agent, Dan Lomont, and both Parker and Parker's attorney regarding the balloon payment demonstrated that Camp treated the contracts as being with Parker. Thus, Camp has waived any right to assert the nonassignment clauses. *See McClellan v. Beatty* (1944), 115 Ind.App. 173, 53 N.E.2d 1013, 1015.

from the evidence to support them. *Id.* We consider only the evidence most favorable to the judgment and do not reweigh the evidence or assess the credibility of witnesses. *Id.*

[8–10] Indiana courts recognize the freedom of parties to enter into contracts, and, indeed, presume that contracts represent the freely bargained agreement of the parties. *Fresh Cut, Inc. v. Fazli* (1995), Ind., 650 N.E.2d 1126, 1129. However, courts have refused to enforce private agreements that contravene statute, clearly tend to injure the public in some way, or are otherwise contrary to the declared public policy of Indiana. *Id.* at 1130. The question of whether an agreement is void on public policy grounds is a question of law to be determined from the surrounding circumstances of a given case. *Straub v. B.M.T. by Todd* (1994), Ind., 645 N.E.2d 597, 598, *reh'g denied.* Where public policy is not explicit, we look to the overall implications of constitutional and statutory enactments, practices of officials and judicial decisions to disclose the public policy of this State. *Id.*

Over twenty years ago, our supreme court addressed the equity of the remedy of forfeiture in land contracts in *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641. The court initially observed that forfeitures are generally disfavored by law, as a significant injustice results where the vendee has a substantial interest in the property. *Id.* at 645–646. The court determined that a land sale contract is akin to a mortgage and, therefore, the remedy of foreclosure is more consonant with notions of fairness and justice:

> [J]udicial foreclosure of a land sale contract is in consonance with the notions of equity developed in American jurisprudence. A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and inimical to the principles of equity.... [A] court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

*Id.* at 650; *see Morris v. Weigle* (1978), 270 Ind. 121, 383 N.E.2d 341, 342. Only in the limited circumstances of an abandoning or absconding vendee, or where the vendee has paid a minimal amount and the vendors' security interest in the property has been endangered by the acts or omissions of the vendee, will forfeiture be considered an appropriate remedy. *Skendzel,* 301 N.E.2d at 650; *Morris,* 383 N.E.2d at 344. The court concluded in *Skendzel* that the payment of approximately 58% of the contract price was substantial and equity required the remedy of foreclosure rather than forfeiture.

We have also previously rejected a contract provision purporting to establish a minimal equity threshold by agreement of the parties. In *Johnson v. Rutoskey* (1984), Ind. App., 472 N.E.2d 620, the vendors argued that by virtue of a contract provision establishing $12,000 paid on a $52,000 purchase price as the "minimal equity threshold," they were entitled to forfeiture, as the vendee had only paid $11,200. Noting that the supreme court in *Morris* found 29.7% of the purchase price to be substantial and not within the "minimal equity" exception of *Skendzel,* we found that the purchaser had substantial equity and that foreclosure was the appropriate remedy. *See also Oles v. Plummer* (1983), Ind.App., 444 N.E.2d 879 (refusal to enforce forfeiture provision where 30.55% of the purchase price had been paid); *McLendon v. Safe Realty Corp.* (1980), Ind.App., 401 N.E.2d 80 (payment representing 40% of total contract price is more than "minimal amount").

The contract before us permits the vendor to seek forfeiture until the vendee attains substantial equity in the property, defined as 75% of the purchase price. We hold that such a provision is void as being against the public policy of this state as set forth in *Skendzel.* Thus, foreclosure instead of forfeiture is the proper remedy.

The judgment is reversed and the cause remanded with instructions to enter a judgment of foreclosure and for such further

proceedings as are consistent with this opinion.

HOFFMAN and RILEY, JJ., concur.