**Brian McLEMORE, Appellant–Plaintiff,**

v.

**Morris McLEMORE, Janice McLemore, Appellees–Defendants.**

**No. 71A05–0406–CV–295.**

Court of Appeals of Indiana.

May 11, 2005.

Fred R. Hains, Hains Law Firm LLP, South Bend, IN, Attorney for Appellant.

Patrick T. McFadden, McFadden & McFadden, South Bend, IN, Attorney for Appellees.

**OPINION**

MATHIAS, Judge.

Brian and Laurie McLemore ("Brian") appeal from a judgment of forfeiture in favor of Morris and Janice McLemore ("Morris") in St. Joseph Circuit Court. They raise the following issues, which we restate as:

I. Whether the trial court erred when it ordered forfeiture instead of foreclosure;

II. Whether the trial court erred when it denied Brian's breach of contract claim; and,

III. Whether the trial court erred when it denied Brian's civil conversion claim.[1]

Concluding that the trial court did not err when it denied Brian's breach of contract and conversion claims, but that the trial court's judgment of forfeiture was clearly erroneous, we affirm in part, reverse in part, and remand.

**Facts and Procedural History**

In 1994, Morris owned a parcel of residential-zoned property located on West Washington Street in Osceola. Morris petitioned the town of Osceola for a zoning reclassification to permit industrial use. The Osceola Town Council approved the zoning change on the condition that Morris provide and maintain a screen or fence on the property.

In October 1997, Morris discussed selling the property to his nephew Brian. Morris and Brian signed a hand-written purchase agreement on October 22, 1997, which provided that Brian had until May 1, 1998 to decide whether he wanted to purchase the property. On May 21, 1998, the parties entered into a conditional land sales contract. The written sales contract provided for a principal sum of $185,000 and called for a down payment of $25,000 and monthly payments of $1545.21, with interest at 10% per annum. The contract called for Brian to be responsible for insurance and taxes. Brian agreed to accept the property "as is" and Morris made "no warranties concerning the zoning and/or compliance of the real estate with any applicable local, state, or federal codes." Appellant's App. p. 40. The parties agreed that Brian would be exclusively responsible for any costs or action needed to bring the real estate in compliance with applicable zoning or code requirements. *Id.*

The contract also contained a forfeiture provision:

The rights of the Purchaser shall terminate and all payments heretofore made shall remain the property of the Seller as rent for the use of the premises and as liquidated damages, and the Purchaser shall immediately surrender possession to Seller. Provided, however, that if the Purchaser has paid a "substantial amount" on the principal purchase price,

---

1. We direct Appellant's attention to Indiana Appellate Rule 46(A)(10) which requires an appellant's brief to "include any written opinion, memorandum of decision or findings of fact and conclusions thereon relating to the issues raised on appeal."

the provisions of this [s]ection [ ] shall not apply and the Seller may pursue such other remedies as herein provided or permitted by Indiana Law. It is stipulated and agreed by the parties that the Purchaser shall have paid a "substantial amount" of the purchase price when the fair market value of the real estate at the time of default exceeds the sum of (a) the then remaining unpaid balance of the purchase price with accrued interest thereon, (b) the estimated cost of resale, (c) the amount of any additional liens on the real estate, and (d) reasonable attorney fees for the enforcement of this contract[.]

Appellant's App. p. 41.

For a period of roughly three years, Brian made monthly payments of $1545.21, paid taxes on the property, and provided insurance. At some point, Brian learned of the zoning requirement that the property be fenced, but did not construct a fence around the property. As of September, 2001, Brian was current with payments. However, he failed to pay property taxes as they came due in 2001, so Morris paid them. On or around September 19, 2001, Morris went to the property to collect a late payment from Brian and the two had an angry exchange.

Shortly thereafter, on September 21, 2001, Morris changed the locks on the property, denying Brian access. On October 4, 2001, Brian delivered a notice to the tenants of the property directing them to make all future rent payments to Morris. On November 19, 2001, Brian filed a complaint against Morris in St. Joseph Circuit Court, alleging constructive fraud, wrongful forfeiture, breach of contract, and conversion. Brian also filed a motion for immediate possession of personal property. Morris counterclaimed for forfeiture, or alternatively, for foreclosure. On January 31, 2002, the trial court granted Brian

thirty days to remove his items of personal property from the premises, but ordered that he would be "subject to $100 per day fine thereafter for any personal property remaining or [Morris] has the option of disposing of the personal property at the expiration of 30 days." Appellant's App. p. 2.

A bench trial commenced on July 8, 2003. On February 26, 2004, the trial court issued findings of fact and conclusions of law and found the land contract forfeited. Brian filed a motion to correct error, which the trial court denied. He now appeals.

### Standard of Review

Our standard of review for findings of fact and conclusions thereon is governed by Indiana Trial Rule 52, which provides that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." T.R. 52(A) (2005). This Court engages in a two-tiered standard of review when applying this standard. *Downing v. Owens*, 809 N.E.2d 444, 449 (Ind.Ct.App.2004), *trans. denied* (citing *Ballard v. Harman*, 737 N.E.2d 411, 416 (Ind.Ct.App.2000)). First, we consider whether the evidence supports the findings and, in so doing, we construe the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* Rather, we consider the evidence that supports the

judgment and the reasonable inferences to be drawn therefrom. *Id.*

## Discussion and Decision

### I. Foreiture

First, Brian argues that the trial court erred when it found that forfeiture rather than foreclosure was the appropriate remedy for the breach of the land sales contract. Forfeiture provisions in a land sales contract are not per se to be deemed unenforceable. *Morris v. Weigle,* 270 Ind. 121, 125, 383 N.E.2d 341, 344 (1978). But, under certain circumstances, they may become unenforceable because of the equity underlying the contract at issue. *Id.* "The court, in the exercise of its equitable powers, does not infringe upon the rights of citizens to freely contract, but the court does refuse, upon equitable grounds, to enforce the contract because of the actual circumstances at the time the court is called upon to enforce it." *Id.*

More than thirty years ago, our supreme court addressed the equity of forfeiture as a remedy in land contracts in *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641 (1973). The court initially observed that forfeitures are generally disfavored by law because a significant injustice results where the vendee has a substantial interest in the property. 261 Ind. at 233–34, 301 N.E.2d at 645–46. The court determined that a land sales contract is akin to a mortgage and, therefore, the remedy of foreclosure is more consonant with notions of fairness and justice:

> [J]udicial foreclosure of a land sale contract is in consonance with the notions of equity developed in American jurisprudence. A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and inimical to the principles of equity.... [A] court of equity must always approach forfeitures with great caution, being forever aware of the possibility of

inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law.

261 Ind. at 240–41, 301 N.E.2d at 650.

Forfeiture may be considered an appropriate remedy only in the limited circumstances of: (1) an abandoning or absconding vendee or (2) where the vendee has paid a minimal amount and the vendor's security interest in the property has been jeopardized by the acts or omissions of the vendee. *Morris,* 270 Ind. at 125, 383 N.E.2d at 344; *Skendzel,* 261 Ind. at 240, 301 N.E.2d at 650; *Parker v. Camp,* 656 N.E.2d 882, 885 (Ind.Ct.App.1995).

Here, the trial court found forfeiture warranted because Brian's breach of the contract fell within both *Skendzel* exceptions. The trial court specifically found that he had abandoned the property, had paid only 10% of the contract price, and had jeopardized Morris's security interest in the property by failing to pay property taxes. Appellant's App. pp. 13–14.

#### A. Abandonment

Brian contends that the trial court erred when it determined "under a totality of the circumstances that [he] abandoned the property[.]" Appellant's App. p. 14. Specifically, the trial court found:

> 6. On or about September 19, 2001 when Morris McLemore went to collect the late rent he was told to "stick the place up your ass" or "stick the fence up your ass" by Brian McLemore.

> 7. On October 4, 2001 Brian McLemore directed the tenants at the premises to pay all future rents or "claims due us" to Morris and Janice McLemore at there [sic] address in Granger. [ ] Contempo-

raneously, Brian McLemore vacated and abandoned the premises leaving significant items of personal property of a salvage nature on the premises.

Appellant's App. pp. 11–12.

■ "[F]or there to be an abandonment of a conditional land sales contract one must actually and *intentionally* relinquish possession of the land and act in a manner which is unequivocally inconsistent with the existence of a contract." *McLendon v. Safe Realty Corp.*, 401 N.E.2d 80, 83 (Ind.Ct.App.1980) (emphasis added). Here, the trial court seems to have relied upon its findings that Brian told Morris to "stick it up your ass" and that he directed tenants to make all future rent payments to Morris as evidence of his intent to abandon the contract. *See* Appellant's App. pp. 11–12. The right to collect rents on the property is an incident of ownership, which accrued to Brian when the parties entered the contract. *See Bill Becom Serv. T.V., Inc. v. Jones*, 503 N.E.2d 1246, 1249 (Ind. Ct.App.1987). The relinquishment of this right could reasonably be viewed as an act "inconsistent with the existence of a contract." *McLendon*, 401 N.E.2d at 83.

However, the record clearly establishes that Brian did not leave the property until Morris changed the locks, and the trial court specifically found that he "abandoned and vacated" the property "[c]ontemporaneously" with the delivery of the rent notice to tenants on October 4, 2001. Appellant's App. p. 12. This does not support a conclusion that Brian "actually and intentionally relinquish[ed] possession of the land[.]" *McLendon*, 401 N.E.2d at 83. *See Morris*, 270 Ind. at 123–24, 383 N.E.2d at 343 ("If the trial court found that [the vendee] remained in possession until repossession under the contract, it would be entirely unreasonable and absurd for the trial court to conclude that the [property] had been abandoned by [the vendee].")

(quoting *Morris v. Weigle*, 375 N.E.2d 677, 679 (Ind.Ct.App.1978) (J. Staton, dissenting)). *See also U.S. Aircraft Fin., Inc. v. Jankovich*, 407 N.E.2d 287, 294 (Ind.Ct. App.1980) (company remaining in possession of property and continuing to carry on business did not abandon contract, despite its breach by committing waste and failing to pay insurance and taxes).

The trial court's findings do not support its conclusion that Brian abandoned the land sales contract. Moreover, to allow Morris the remedy of forfeiture because of abandonment when he forced Brian to relinquish possession of the property by locking him out would hardly be "consonant with notions of fairness and justice" as set forth in *Skendzel.*

### B. *Minimal payment and jeopardized security interest*

■ Next, Brian argues that the trial court erred by finding he fell within the second *Skendzel* exception, which requires a showing of both that the vendee has paid only a minimal amount toward the contract price and that the vendor's security interest has been jeopardized. *Nelson v. Gurley*, 673 N.E.2d 497, 500 (Ind.Ct.App.1996) (citing *Johnson v. Rutoskey*, 472 N.E.2d 620, 624–25 (Ind.Ct.App.1984) (citing *Skendzel*, 301 N.E.2d at 650)). Whether a particular sum paid toward a contract price is minimal depends upon the totality of the circumstances surrounding the contract and its performance. *Johnson*, 472 N.E.2d at 626.

■ Morris contends that forfeiture was the appropriate remedy for breach because the contract called for forfeiture of any payment as liquidated damages until Brian had paid a "substantial amount" on the principal purchase price. The contract defined that "substantial amount" as "when the fair market value of the real estate at the time of default exceeds the sum of (a)

the then remaining unpaid balance of the purchase price with accrued interest thereon, (b) the estimated cost of resale, (c) the amount of any additional liens on the real estate, and (d) reasonable attorney fees for the enforcement of the contract[.]" Appellant's App. p. 41. Morris asserts that Brian had not paid a "substantial amount" under this formula, while Brian contends that he had.

We have previously rejected contract provisions purporting to establish a minimal equity threshold by agreement of the parties. In *Parker v. Camp*, 656 N.E.2d 882 (Ind.Ct.App.1995), we held that a contract provision permitting the vendor to seek forfeiture until the vendee attained "substantial equity" in the property, defined as 75% of the purchase price, to be void as against the public policy of this state as set forth in *Skendzel*. *Id.* at 885. Likewise, in *Johnson*, 472 N.E.2d at 620, the vendors argued that forfeiture was warranted by virtue of a contract provision requiring $12,000 payment on a purchase price of $52,000 as the "minimal equity threshold." However, we concluded that the vendee's payment of $11,000 toward the principal constituted more than minimal payment and that foreclosure was the appropriate remedy. *Id.* at 626.

The trial court found that Brian had paid "a mere 10% of the total contract price." Appellant's App. p. 13. The trial court's findings and conclusions offer no indication how it reached this figure. It is undisputed that Brian paid a total of $96,363.48, of which $33,727.83 was applied to principal. Tr. pp. 8–9. The amount applied to the principal is computed to be 18.2% of the contract price of $185,000.

Courts determining whether a vendee has made more than minimal payment have looked at payments toward both principal and interest. *See Morris*, 270 Ind. at 122, 383 N.E.2d at 342; *Oles v. Plummer*, 444 N.E.2d 879, 882 (Ind.Ct.App.1983); *Fisel v. Yoder*, 162 Ind.App. 565, 572, 320 N.E.2d 783, 788 (1974). *See also Looney v. Farmers Home Admin.*, 794 F.2d 310, 313 (7th Cir.1986). In addition to the amount paid, this court has also considered the length of time and the number of payments made in determining whether a vendee had made minimal payment. *See S.B.D. v. Sai Mahen, Inc.*, 560 N.E.2d 86, 88 (Ind.Ct.App.1990). The *Skendzel* court did not provide a minimum threshold that would permit forfeiture, but held that a vendee who had paid 29% of principal had made more than minimal payment. *See also Morris*, 270 Ind. at 122, 383 N.E.2d at 342 (29.7% of contract price was substantial amount); *S.B.D., Inc.*, 560 N.E.2d at 88 (28% of contract price was substantial amount). We also note that a panel of this court observed in dicta that a payment of 18.6% of the contract principal would be more than minimal payment. *See Oles*, 444 N.E.2d at 879.

Here, there is no dispute that Brian made regular payments for roughly three years in a total amount of $96,363.48, and had paid 18.2% of the principal. Although he failed to make one year's property tax payment, Brian continued to make monthly payments and maintained insurance on the property until Morris effectively dispossessed him by changing the locks. Under all these facts and circumstances, we conclude that Brian had made more than minimal payment for purposes of *Skendzel*.

Even if only a minimal amount has been paid on the contract price, forfeiture is not appropriate unless the vendor's security interest is jeopardized by the vendee's acts or omissions. *Morris*, 270 Ind. at 125, 383 N.E.2d at 344. Nothing in the record suggests that foreclosure on the property would not have satisfactorily protected the interests of both parties. Although the trial court found that Morris

had to pay $3000 to have trash and debris removed from the premises, Morris testified that the property was worth "probably the same" as in 1998. Tr. p. 32. Upon foreclosure,

> the vendee retains a vendee's lien upon the sale, and once the balance owed under the contract has been paid to the vendor, the vendee may retain the proceeds from the sale. If the foreclosure does not net a sufficient amount to satisfy the vendor's remaining security interest in the property, a damage judgment for waste caused by the vendee equivalent to the amount recoverable by a mortgagee as a deficiency judgment would be appropriate.

*Morris,* 270 Ind. at 126, 383 N.E.2d at 344. Thus, Morris's security interest in the property was not jeopardized. However, because the trial court also found that Morris had to pay $3000 to have trash and debris removed from the premises, Morris is entitled to recover that sum from Brian.

Under these facts and circumstances, the trial court erred when it ordered forfeiture rather than foreclosure as the remedy for Brian's breach of the land sales contract.

## II. Breach of Contract Claim

■ Next, Brian argues that trial court erred when it failed to find that Morris had breached the contract by seeking forfeiture rather than foreclosure. Specifically, Brian contends that Morris breached the contract by pursuing forfeiture when Brian had paid a "substantial amount" as that term is defined by the contract. Brian asserts that he should be awarded damages of $63,727.83 (the $33,727.83 paid on the contract plus "$30,000 worth of improvements"), the amount he claims he would have recovered had Morris foreclosed on the property. Br. of Appellant at 13.

Brian's contention that he had paid a "substantial amount" is based upon his assertion that the fair market value of the property is $185,000 (the contract purchase price). However, as the trial court found, "[t]here was a complete failure of evidence produced by [Brian] regarding the fair market value of the premises at the time of the breach of the land contract or initiation of this lawsuit or at any time subsequent to the execution of the land contract." Appellant's App. p. 13. While Morris testified that the property was worth "probably the same" as in 1998, and offered evidence of his attorney fees, Brian failed to offer evidence of the other factors in the contract's provision calculating "substantial amount." Tr. p. 32. Specifically, Brian failed to present evidence of the "estimated costs of resale" or of "the amount of any additional liens on the real estate[.]" Appellant's App. p. 41. Therefore, we cannot conclude that the trial court erred when it denied Brian's breach of contract claim.

## III. Conversion Claim

■ Finally, Brian argues that the trial court erred when it denied his claim for civil conversion. The trial court found that the conversion claim "must fail because even after the Court granted the plaintiffs one month to recover any personal property they had on the premises[,] the evidence is uncontroverted that they failed to remove all the property by the expiration of the Court's deadline." Appellant's App. p. 14. However, Brian contends that Morris should still be liable for conversion of Brian's personal property between the time of the lockout and the time of the trial court's order allowing Brian thirty days to recover his property. He also contends that several items of personal property were never recovered from Morris. Tr. p. 54.

 A civil action under the criminal conversion statute[2] is permitted by Indiana Code section 34–24–3–1, which states that "[i]f a person suffers a pecuniary loss as a result of a violation of IC 35–43 …, the person may bring a civil action against the person who caused the loss for [damages.]" Ind.Code § 34–24–3–1 (1999). In order to establish a viable claim, a plaintiff must show a violation of one of the specific code sections and that such violation caused the loss suffered by the plaintiff. *See Yoder Grain, Inc. v. Antalis,* 722 N.E.2d 840, 850 (Ind.Ct.App.2000) (citing *Gilliana v. Paniaguas,* 708 N.E.2d 895, 899 (Ind.Ct.App.1999), *trans. denied* ).

Here, Brian alleges that Morris knowingly and intentionally exerted unauthorized control over Brian's personal property. In support of his argument, Brian directs us to *Robinson v. Valladares,* 738 N.E.2d 278 (Ind.Ct.App.2000). In *Robinson,* we affirmed the trial court's damage award to a defaulting tenant whose landlord locked her out of her apartment and denied her access to her personal property. We are inclined to agree that Morris's action in locking Brian out of the premises and denying him access to his personal property was without a legal basis, and note that "resort to self-help instead of legal remedy to satisfy a claim is not favored." *Id.* at 282 (quoting *Hayes v. Harris,* 479 N.E.2d 1359, 1361 (Ind.Ct.App. 1985)). However, at trial, Brian failed to present evidence that he had suffered any pecuniary loss as a result of Morris's actions, either from the time he was denied access to his property as a result of the lockout or from the loss of items he alleges were never recovered from Morris.

Therefore, we cannot conclude that the trial court erred when it denied his civil conversion claim.

### Conclusion

The trial court did not err when it denied Brian's claims for breach of contract and conversion. However, the trial court's order of forfeiture of the land sales contract was clearly erroneous. Therefore, we affirm in part, reverse in part, and remand with instructions to enter judgment consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

BAILEY, J., and SULLIVAN, J., concur.

**2.** "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion...." Ind.Code 35–43–4–3 (2004). The plaintiff in a civil conversion action is only required to prove these elements by a preponderance of the evidence. *Anderson v. Indianapolis Ind. AAMCO Dealers Adver. Pool,* 678 N.E.2d 832, 838 (Ind.Ct.App.1997) (citing *DBC Capital Fund, Inc. v. Snodgrass,* 551 N.E.2d 475, 478 (Ind.Ct.App.1990)).