863 N.E.2d 413 (2007)
In the Matter of C.S., L.S., and M.S., Children in Need of Services,
Christopher Montgomery, Appellant-Respondent
v.
Marion County Office of Family and Children, Appellee-Petitioner and
Child Advocates, Inc., Co-Appellee (Guardian ad Litem).
No. 49A04-0608-JV-435.
Court of Appeals of Indiana.
March 30, 2007.
*414 Michael C. Borschel, Indianapolis, IN, Attorney for Appellant.
Barry A. Chambers, Indianapolis, IN, Attorney for Appellee.

OPINION
ROBB, Judge.

Case Summary and Issue
Christopher Montgomery appeals the trial court's determination that his child, C.S., is a child in need of services ("CHINS"), alleging that the trial court's determination was not supported by sufficient evidence. Concluding that the evidence and findings do not support the trial court's judgment, we reverse.

Facts and Procedural History
C.S. was born on November 25, 2005, to Loretta Savage. Savage and Montgomery were not married at the time of C.S.'s birth and Montgomery was not present at the birth, although he did visit Savage and C.S. in the hospital several times. Savage did not name Montgomery as C.S.'s father on the birth certificate and Montgomery did not sign a paternity affidavit at the hospital. Savage tested positive for opiates and benzodiazepines when C.S. was born, and C.S. tested positive for benzodiazepines. These drug test results were forwarded to the Marion County Department of Child Services ("DCS"). Jennifer Sweazy, a DCS investigator, interviewed *415 Savage at the hospital. Savage admitted to using drugs during her pregnancy. Savage told Sweazy that Montgomery was C.S.'s father, but told Sweazy that she did not know where he was and did not tell her that he had been visiting the hospital because "she didn't ask me if he was at the hospital." Transcript at 34. Based on this interview, DCS filed a CHINS petition on November 29, 2005. An initial hearing was held that same day at which Savage admitted the allegations of the petition and C.S. was placed in foster care.[1] Montgomery did not appear at the hearing, and the initial hearing was continued as to him.[2]
On January 12, 2006, Montgomery appeared for the continued initial hearing, at which time he acknowledged his paternity of C.S. and informed the court that he wanted to establish paternity and have his name put on C.S.'s birth certificate. Because Montgomery was a minor and because his mother lives out of state, the court appointed his aunt, with whom he lives, as temporary guardian over him for purposes of this proceeding and also appointed an attorney to represent him. The court granted Montgomery supervised visitation with C.S. and told him how to get a DNA test for the purpose of establishing paternity.
At a fact-finding hearing on April 19, 2006, the court noted that Montgomery had taken a DNA test.[3] Sweazy, the DCS investigator, was called as the sole DCS witness. She testified that a report had been filed on November 26, 2005, alleging that both Savage and C.S. had tested positive for drugs when C.S. was born. When Sweazy met with Savage, Savage admitted she had used a friend's non-prescription Xanax and Valium during her pregnancy and as recently as four days prior to C.S.'s birth. Savage told Sweazy that Montgomery was C.S.'s father, but did not give Sweazy any contact information for Montgomery. Sweazy testified that, to her knowledge, Montgomery had not established paternity of C.S. as of the date of the hearing. When asked if Montgomery had refused to supply food, clothing, shelter, medical care, education, or supervision for C.S., Sweazy repeatedly answered, "I don't know." Tr. at 27-28. When asked what the physical condition of the child was when Sweazy saw her, she answered that she "appeared clean and healthy." Tr. at 28. Sweazy also testified that she had no contact with Montgomery or anyone on his behalf during the investigation. DCS rested on Sweazy's testimony, and Montgomery moved for a directed verdict. The trial court denied Montgomery's motion.
Montgomery then called Savage as a witness. She testified that Montgomery came to the hospital after C.S.'s birth three or four times, that he expressed a desire to sign a paternity affidavit but she had already signed the papers and did not *416 report that he was the father, and that he offered to make arrangements to care for C.S. She further testified that she told Montgomery DCS was involved and gave Sweazy's contact information to him. Montgomery testified on his own behalf that he called and left messages for Sweazy on numerous occasions but she never returned his calls. He testified that he is employed, working toward his GED, lives with his aunt in a home with room for C.S., and wants to take care of her. He has submitted to random drug tests that have been negative, and he has voluntarily received services from Father's Resource Center, which teaches basic parenting skills and provides help finding employment. Montgomery's aunt testified that he lives with her in a home with plenty of space for C.S. and that she is willing to help take care of her. She personally witnessed Montgomery attempting to contact Sweazy, and she also tried to contact her several times without success.
Prior to the fact-finding hearing, Montgomery had requested the entry of findings of fact and conclusions thereon. The court solicited proposed orders from the parties, and on May 22, 2006, the court accepted in their entirety DCS' proposed findings of fact and conclusions of law, incorporating the same into its judgment finding that C.S. is a CHINS requiring court intervention and ordering that C.S. be removed from Montgomery's care, custody, and control. The findings of fact and conclusions of law provide, in pertinent part, as follows:
The Court finds that [DCS] has met its burden by a preponderance of the evidence, and the Court grants the Petition Alleging Children in Need of Services and makes the following findings of fact, conclusions of law, and judgment entry.

FINDINGS OF FACT
The Court finds the following by a preponderance of the evidence:
1. All events in the petition occurred in Marion County, Indiana.
2. Loretta Savage is the mother of [C.S.]
3. Christopher Montgomery is the alleged father of [C.S.]
4. [C.S.] was born on November 25, 2005, and is six (6) months old.
5. On or about November 26, 2005, DCS received a report alleging that the mother, Loretta Savage, tested positive for opiates and benzodiazepines at the birth of her child, [C.S.], and that [C.S.] tested positive for benzodiazepines at birth.
6. Loretta Savage took non-prescription Xanax and Valium while pregnant with [C.S.], and her last use of these drugs was approximately four days prior to giving birth to [C.S.]
7. Jennifer Sweazy was the DCS investigator assigned to investigate the November 2005 report, which led to this CHINS filing.
8. Ms. Sweazy completed a thorough investigation into the allegations, which included interviewing the mother, Loretta Savage, and obtaining medical records on Loretta Savage and [C.S.] from Methodist Hospital.
9. Loretta Savage is the sole legal custodian of [C.S.]
10. Christopher Montgomery has not established paternity for [C.S.], nor did he sign a paternity affidavit at the hospital.
11. DCS substantiated the original allegations of neglect because the mother, Loretta Savage, took non-prescription Xanax and Valium while pregnant with [C.S.], her last use of these drugs was approximately four days prior to *417 giving birth to [C.S.], and [C.S.] tested positive for benzodiazepines at birth.
12. Loretta Savage admitted the allegations in the CHINS petition at the initial hearing on November 29, 2005.
* * *
CONCLUSIONS OF LAW
1. This Court has jurisdiction over the parties and subject matter pursuant to Indiana Code 31-30-1-1(2) and Indiana Code 31-30-2-1.
2. All events in the Child in Need of Services petition and the [DCS] investigation occurred in Marion County, Indiana.
3. [C.S.] is a child in need of services as defined in IC 31-34-1 in that her physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of her parent, guardian or custodian to provide her with necessary food, clothing, shelter, medical care, education or supervision.
4. [C.S.] is a child in need of services as defined in IC 31-34-1 in that the child was born with fetal alcohol syndrome or any amount, including a trace amount, of a controlled substance or a legend drug in the child's body.
5. [C.S.] is a child in need of services because her mother, Loretta Savage, took non-prescription Xanax and Valium while pregnant with [C.S.], her last use of these drugs was approximately four days prior to giving birth to [C.S.], and [C.S.] tested positive for benzodiazepines at birth.
6. [C.S.] needs care, treatment or rehabilitation that she is not receiving and that is unlikely to be provided or accepted without the coercive intervention of the court.
* * *
IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED, by the Court that [C.S.] is a Child in Need of Services as to Christopher Montgomery.
Appellant's App. at 105-08. Montgomery now appeals.

Discussion and Decision[4]

I. Standard of Review
As noted above, Montgomery requested the entry of specific findings of fact and conclusions of law. When we review a case in which a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless they are clearly erroneous. Ind. Trial Rule 52(A). We engage in a two-tiered standard of review, considering first whether the evidence supports the findings and then whether the findings support the judgment. McLemore v. McLemore, 827 N.E.2d 1135, 1139 (Ind.Ct.App.2005). Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. Id. A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it. Id. In applying this standard, we neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. Staresnick v. Staresnick, 830 N.E.2d 127, 131 (Ind.Ct.App. 2005).

II. CHINS Determination
DCS alleged that C.S. was a CHINS because her physical or mental condition *418 was seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of her parent, guardian or custodian to supply her with necessary food, clothing, shelter, medical care, education or supervision, see Ind.Code § 31-34-1-1(1), and because she was born with an amount of a controlled substance or legend drug in her body, see Ind.Code § 31-34-1-10(1)(B). DCS further alleged that C.S. was in need of care, treatment or rehabilitation that she was not receiving and not likely to receive without the coercive intervention of the court. See Ind.Code §§ 31-34-1-1(2); XX-XX-X-XX(2). DCS was required to prove these allegations by a preponderance of the evidence. Ind. Code § 31-34-12-3; In re A.H., 751 N.E.2d 690, 695 (Ind.Ct.App.2001), trans. denied.
Montgomery contends that there is not sufficient evidence supporting the trial court's determination that C.S. was a CHINS with regard to him. We agree. Although there is evidence in the record supporting each of the findings made by the trial court, the findings do not support the trial court's judgment that C.S. is a CHINS as to Montgomery. The trial court's findings focus on Savage's actions with respect to C.S. and specifically relate primarily to her drug use during pregnancy. In fact, the only finding relating to Montgomery at all is that he has not established paternity of C.S. and did not sign a paternity affidavit at the hospital. There can be no doubt that DCS proved by a preponderance of the evidence that C.S. was born with drugs in her system; however, there was no allegation and no evidence that Montgomery was responsible for that circumstance and the CHINS determination as to Montgomery cannot be supported on this basis.
The CHINS determination as to Montgomery, then, would have to rest on his inability, refusal, or neglect to furnish C.S. with necessities, including food, clothing, shelter, medical care, education, and supervision. DCS contends on appeal that it proved this by a preponderance of the evidence because "Montgomery's interest in and stated willingness to provide for the support of [C.S.] in April [at the fact-finding hearing] is irrelevant to the CHINS determination and the allegations made against him in November, 2005 [when the petition was filed]." Brief of Petitioner-Appellee at 7. Montgomery's situation at the time the CHINS petition was filed is a recurrent theme in DCS' brief. See id. at 6 ("When the CHINS petition was filed, Montgomery had not taken any steps to establish paternity and was not available to provide care, necessities or supervision for [C.S.]"), and 7 ("[A]t the time the CHINS petition was filed, [Savage] and DCS were unaware of Montgomery's whereabouts and DCS had no information of his alleged interest in [C.S.] and providing for her."). However, as in termination of parental rights cases, we do not believe it is Montgomery's situation at the time the petition was filed that is the only factor relevant to the trial court's determination. Rather, the trial court should also consider his situation at the time the case was heard by the court. See Matter of D.T., 547 N.E.2d 278, 284 (Ind. Ct.App.1989), trans. denied ("[A]n adjudication that a child is dependent and neglected may not be based solely on conditions which existed in the distant past, but exist no longer.").
DCS contends that the CHINS determination can be supported by the trial court's finding that Montgomery did not sign a paternity affidavit at the hospital and had not since established paternity. Montgomery testified that he was available and willing to sign a paternity affidavit at the hospital after C.S. was born, but was *419 prevented from doing so. Savage's testimony supported this assertion. After being prevented from signing the paternity affidavit, Montgomery would not have had a reasonable opportunity to establish paternity before the CHINS petition was filed, four days after C.S.'s birth. He has since indicated his intention to establish paternity and has undergone genetic testing toward that goal. DCS cites In re S.M, 840 N.E.2d 865 (Ind.Ct.App.2006), in support of its assertion that Montgomery's "failure to establish paternity" supports the trial court's determination. See Br. of Petitioner-Appellee at 8-9. In that case, we held that where the father had failed to take any steps toward establishing his paternity or demonstrating his fitness as a parent and where he had been told by his case manager of the steps he needed to take to do so, the trial court did not err in determining that there was a reasonable probability that the conditions resulting in the child's removal would not be remedied. 840 N.E.2d at 869. However, S.M. was decided in the context of a termination of parental rights case, unlike the CHINS determination we are considering here. More importantly, the father in S.M. had failed to take any steps to establish paternity for a period of over eighteen months, whereas here, despite receiving no counseling from DCS regarding how to establish paternity, Montgomery repeatedly indicated his desire to do so and in the five months between the filing of the petition and the fact-finding hearing, took affirmative steps toward doing so. Montgomery's "failure" to establish paternity before the fact-finding hearing is not evidence of neglect on his part that would seriously impair or endanger C.S.[5]
Montgomery also testified that he has a job, stable housing, has voluntarily taken parenting classes, and has undergone drug testing with consistent negative results. DCS presented no evidence that would controvert the testimony of Montgomery and the witnesses called on his behalf that he has the ability and desire to provide food, shelter, and other necessities for C.S. and that he has strong family support. Further, DCS presented no evidence to show that C.S.'s physical or mental condition would be seriously impaired or endangered in Montgomery's care. Finally, DCS presented no evidence that would tend to show that Montgomery would require the coercive intervention of the court to appropriately care for C.S. He voluntarily underwent genetic testing. He voluntarily participated in services designed to develop his parenting skills, even though there is no evidence that he needed those services. See In re T.H., 856 N.E.2d 1247, 1251 (Ind.Ct.App.2006) (holding that father's failure to complete services which he volunteered to accept when there was no evidence that he actually needed them was an insufficient basis on which to base a CHINS determination). In fact, the only evidence before the trial court relating to Montgomery was that he would be an acceptable parent to C.S.

*420 Conclusion

The evidence and findings do not support the trial court's judgment that C.S. is a CHINS with respect to Montgomery. We therefore reverse the trial court's order.
Reversed.
BAKER, C.J. and DARDEN, J., concur.
NOTES
[1] Savage is the mother of two other children, M.S. and L.S., who were also included in the CHINS petition. Montgomery is not the alleged father of these two children, and the disposition as to them is not at issue in this appeal.
[2] Montgomery did not get service regarding the November 29, 2005, hearing because Savage did not provide an address for him and DCS was unable to locate him with the information she did provide. Montgomery's address was shown as "unknown" on the CHINS petition, appellant's appendix at 25, and it appears that Montgomery was not served with a summons in this matter until he appeared in court for the January 12, 2006, continued initial hearing, id. at 37.
[3] The record shows that Montgomery, Savage, and C.S. submitted DNA samples on February 8, 2006, and the results, signed February 16, 2006, showed a 99.999999% probability that Montgomery is C.S.'s father. Appellant's App. at 76.
[4] DCS has filed a motion to amend its brief to delete one sentence erroneously included therein. We hereby grant DCS' motion.
[5] DCS also argues that because Montgomery has not yet established paternity, he has no "legal right to custody and care" of C.S. See Br. of Petitioner-Appellee at 8. This seems to be a challenge to Montgomery's standing to challenge the CHINS determination. As we noted in S.M., "DCS is asking us to divest [father] of his standing to challenge a ruling stemming from an action wherein DCS actually named him as a respondent." 840 N.E.2d at 872 (emphasis in original). In addition to pointing out the absurdity of such an argument, we noted the possible due process implications of such a result. Id. Here, too, Montgomery was named by DCS as a respondent and was called before the court to answer the allegations of its petition. No one disputes that Montgomery is, in fact, C.S.'s father. DCS cannot both take him to task for allegedly failing to live up to his legal responsibilities as a parent and also deny he has the legal rights of a parent.