**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 10 2014, 9:34 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| STEVE MITCHELL, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 27A05-1405-CC-202 |
| | ) | |
| DAN R. WALKER, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE GRANT SUPERIOR COURT
The Honorable Jeffrey D. Todd, Judge
Cause No. 27D01-1302-CC-169

**November 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Steve Mitchell appeals the trial court's judgment in favor of Dan R. Walker following a bench trial. Mitchell raises a single issue for our review, namely, whether the trial court's judgment is clearly erroneous. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In June of 2010, Mitchell and Walker entered into a written contract for the sale of certain real property in Gas City.[1] According to their agreement, Mitchell purchased the property for $102,000, which was to be paid with $7,000 down and $1,000 per month thereafter. Mitchell was also responsible for real property tax payments on the property. Mitchell had no other obligations under the contract.

The contract provided the following remedy to Walker in the event of Mitchell's breach:

> If [Mitchell] fails to pay any installment of purchase price or taxes on the real estate at the time they [sic] become due, and if such failure continues for a period of thirty (30) days after receipt of written notice from [Walker] to [Mitchell,] then, in such event, [Walker] may, at his option, cancel and terminate this agreement and take full possession of the real estate and remove [Mitchell].

Pl.'s Ex. A at 2.

In the spring of 2012, Walker learned that Mitchell had not paid the taxes due on the property. On June 4, Walker sent to Mitchell a notice of this breach. However, after that notice, Mitchell and Walker "had a discussion and reached an agreement" that Mitchell "would continue to pay and catch up on the taxes . . . ." Tr. at 39.

---

[1] Mitchell's wife, Barbara, executed the contract, but the trial court found that Mitchell, at all relevant times thereafter, has acted as Barbara's agent. For clarity of discussion, we simply refer to Mitchell.

Meanwhile, Mitchell leased the property to Bobby Trexler. Around November 1, Mitchell informed Walker that Trexler wished to purchase the property. Accordingly, Mitchell and Walker executed a purchase agreement for Trexler to sign. Pursuant to that agreement, $65,000 of Trexler's purchase price "will be for contract pay off to Dan R. Walker [for the] balance [owed by] Steve Mitchell." Pl.'s Ex. E at 1. But the attempt to reach an agreement with Trexler did not come to fruition.

On December 6, Walker sent another notice to Mitchell. Pursuant to that notice, Walker informed Mitchell that "the property taxes have not been paid on time" and that "[t]his must be done as per our contract within 30 days." Def.'s Ex. at 2. On December 8, Mitchell asked Walker to "give him through the weekend to see what he was go[ing] to do." Tr. at 45.

On Monday, December 10, Mitchell met with Walker and told Walker that he "should actually take the property back." Id. at 46. Mitchell stated that he had "no income coming in because Trexler had pulled out," and Mitchell was having health and legal problems. Id. at 47. Mitchell further explained that "it would be in [Walker's] best interest to just go ahead and take the property back" because Mitchell's legal problems could result in "liens [being] placed against the property." Id.

Walker "agreed to take the property back at the condition it was in" and further agreed to relieve Mitchell of Mitchell's obligation to pay the fall taxes, which were overdue. Id. at 49. Mitchell agreed to immediately surrender the property in exchange. The parties memorialized this agreement with a handwritten document that stated, in relevant part: "Steve Mitchell will not be responsible for any taxes . . . or payments on

3

property . . . from this date 12-10-12, including fall 2012." Pl.'s Ex. F. The parties signed this document on December 12, and Walker immediately repossessed the property and paid the taxes due. Mitchell made no further payments to Walker either towards the purchase price or for the taxes. At the time, Mitchell had paid to Walker $37,000 towards the $102,000 purchase price.

On January 11, 2013, Walker attempted to enter the property but could not because Mitchell had changed the locks. Walker had the locks removed and installed his own new locks. Mitchell then filed a lawsuit against Walker in which Mitchell alleged that Walker repossessed the property in violation of the parties' June 2010 agreement.

On December 19, 2013, the trial court held a bench trial on Mitchell's complaint. On February 3, 2014, the court entered findings of fact and conclusions thereon for Walker on Mitchell's complaint.[2] In its order, the court expressly found that "[o]nly Mitchell and Walker testified at trial, and the testimony of each completely contradicted the testimony of the other. The Court found Walker to be the more credible witness." Appellant's App. at 8. The court then concluded: "The written agreement dated December 12, 2012, coupled with extrinsic evidence in the form of Walker's testimony, persuasively demonstrated that Mitchell forfeited any interest he had in the subject property in exchange for being released from his obligation to pay in accordance with the [June 2010] Contract"; and that "Mitchell's decision to 'walk away' from the Contract and forfeit any interest he had in the property, while questionable from a business

_____

[2] The court found for Mitchell on Walker's counter-claim, but that is not relevant to this appeal.

4

standpoint, was voluntary." Id. at 9-10. Mitchell filed a motion to correct error, which the court denied after a hearing. This appeal ensued.

## DISCUSSION AND DECISION

Mitchell appeals the trial court's judgment, which is based on findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). In such appeals:

> we shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Factual findings are only clearly erroneous where there is no support for them in the record, either directly or by inference; a judgment is only clearly erroneous when it applies an improper legal standard to proper facts. In either case, we must be left with the firm conviction that a mistake has been made.

Johnson v. Johnson, 999 N.E.2d 56, 59 (Ind. 2013) (citations and quotations omitted). When a judgment is entered pursuant to Trial Rule 52(A), "the reviewing court may affirm the judgment on any legal theory supported by the findings." Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998).

Further, despite Mitchell's argument to the contrary he is appealing from a negative judgment.[3] As such, he must

> demonstrate that the trial court's judgment is contrary to law. A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences.

---

[3] Mitchell asserts that the negative judgment standard does not apply here because "the issue [i]n this appeal involves the trial court's interpretation of the December 10th document signed by the parties, and which Walker raised as an affirmative defense." Appellant's Br. at 7. As explained in more detail below, we disagree. The trial court entered judgment against Mitchell on the grounds that Walker had not breached the June 2010 contract because Mitchell had forfeited his rights under that contract. To be sure, however, whether the negative judgment standard applies does not affect our disposition.

Infinity Prods., Inc. v. Quandt, 810 N.E.2d 1028, 1032 (Ind. 2004) (quotations omitted).

We also note that Walker has not filed an appellee's brief.

> When the Appellee fails to submit an answer brief we need not undertake the burden of developing an argument on the Appellee's behalf. Instead we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error. Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it.

Front Row Motors, LLC v. Jones, 5 N.E.3d 753, 758 (Ind. 2014) (alteration, citations, and quotations omitted).

Mitchell's suit against Walker alleges in relevant part that Walker breached the June 2010 contract when Walker repossessed the property in December of 2012. The trial court rejected this argument. In particular, the court concluded that Mitchell "forfeited any interest he had in the subject property in exchange for being released" from his obligations under the June 2010 contract. Appellant's App. at 9. On appeal, Mitchell first asserts that the trial court erred as a matter of law when it concluded that the December 2012 document was a freestanding contract that "rescinded" the June 2010 contract, and he maintains that the court erred when it used parole evidence to add material terms to the December 2012 document, which does not expressly mention "rescission."[4] Appellant's Br. at 8-12.

---

[4] Mitchell uses the term "rescission" incorrectly. For Walker to have alleged rescission of the June 2010 contract, as Mitchell argues Walker did, Walker would have had to return to Mitchell the payments Mitchell had made to Walker, less any reasonable value Mitchell had obtained from his use of the property. See e.g., Hart v. Steel Prods., Inc., 666 N.E.2d 1270, 1275 (Ind. Ct. App. 1996), trans. denied. But Walker never suggested that Mitchell was entitled to the $37,000 Mitchell had paid towards the property. And the trial court did not find or conclude that a rescission occurred. Rather, again, the court found that Mitchell had intentionally and voluntarily forfeited his rights under the June 2010 contract. That is not a rescission.

6

Mitchell's attack on the trial court's judgment misses the mark. Regardless of whether the trial court determined that the December 2012 document was a freestanding and enforceable agreement to "walk away from" the June 2010 contract, the fact remains that the court found that Mitchell had intentionally and voluntarily "forfeited" his rights to the property. Id. at 9-10. The trial court's findings are supported not just by the December 2012 document but also by Walker's testimony.[5]

As we have explained:

Forfeiture provisions in a land sales contract are not per se to be deemed unenforceable. Morris v. Weigle, 270 Ind. 121, 125, 383 N.E.2d 341, 344 (1978). But, under certain circumstances, they may become unenforceable because of the equity underlying the contract at issue. Id. "The court, in the exercise of its equitable powers, does not infringe upon the rights of citizens to freely contract, but the court does refuse, upon equitable grounds, to enforce the contract because of the actual circumstances at the time the court is called upon to enforce it." Id.

More than thirty years ago, our supreme court addressed the equity of forfeiture as a remedy in land contracts in Skendzel v. Marshall, 261 Ind. 226, 301 N.E.2d 641 (1973). The court initially observed that forfeitures are generally disfavored by law because a significant injustice results where the vendee has a substantial interest in the property. 261 Ind. at 233-34, 301 N.E.2d at 645-46. The court determined that a land sales contract is akin to a mortgage and, therefore, the remedy of foreclosure is more consonant with notions of fairness and justice:

[J]udicial foreclosure of a land sale contract is in consonance with the notions of equity developed in American jurisprudence. A forfeiture—like a strict foreclosure at common law—is often offensive to our concepts of justice and inimical to the principles of equity.... [A] court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under

---

[5] Insofar as Mitchell argues that his testimony demonstrates that there was no meeting of the minds between the parties in December of 2012, Mitchell ignores the fact that the trial court expressly credited Walker's testimony over his.

circumstances in which it is found to be consonant with notions of fairness and justice under the law.

261 Ind. at 240-41, 301 N.E.2d at 650.

Forfeiture may be considered an appropriate remedy only in the limited circumstances of: (1) an abandoning or absconding vendee or (2) where the vendee has paid a minimal amount and the vendor's security interest in the property has been jeopardized by the acts or omissions of the vendee.

McLemore v. McLemore, 827 N.E.2d 1135, 1140 (Ind. Ct. App. 2005) (alterations and omissions original; emphasis added).

"'[F]or there to be an abandonment of a conditional land sales contract one must actually and intentionally relinquish possession of the land and act in a manner which is unequivocally inconsistent with the existence of a contract." Id. at 1141 (quoting McLendon v. Safe Realty Corp., 401 N.E.2d 80, 83 (Ind. Ct. App. 1980)) (emphasis and alteration original to McLemore); see also Morris, 270 Ind. at 123-24, 383 N.E.2d at 343 ("If the trial court found that the vendee remained in possession until repossession under the contract, it would be entirely unreasonable and absurd for the trial court to conclude that the property had been abandoned by the vendee.") (quotations and alterations omitted); U.S. Aircraft Fin., Inc. v. Jankovich, 407 N.E.2d 287, 294 (Ind. Ct. App. 1980) (company remaining in possession of property and continuing to carry on business did not abandon contract, despite its breach by committing waste and failing to pay insurance and taxes).

Here, Walker testified that he sent a notice to Mitchell on December 6, 2012, which stated that Mitchell had not paid the property taxes on time as required by the June 2010 contract. Mitchell asked Walker to "give him through the weekend to see what he

8

was go[ing] to do," and, the following Monday, Mitchell told Walker that Walker "should . . . take the property back." Tr. at 45-46. Mitchell then agreed to immediately surrender the property to Walker, despite any rights Mitchell may have had to delay that surrender, and in exchange Walker agreed to "take the property back at the condition it was in" and to relieve Mitchell of all outstanding payment obligations, including back taxes due. Tr. at 49. The parties expressed this intent in the December 2012 document and in their subsequent course of conduct. As agreed, Walker immediately repossessed the property and paid the taxes due on the property, and Mitchell made no further payments to Walker under the June 2010 contract. About one month later, Mitchell attempted to regain possession of the property, which led to this lawsuit.

Again, the question on appeal is not simply whether the December 2012 document in itself rescinded or cancelled the June 2010 contract but whether the document, together with other evidence, demonstrate that Mitchell forfeited his rights to the property in December 2012. The evidence supports the trial court's findings that he did so. In particular, the evidence credited by the trial court demonstrates that Mitchell expressly relinquished his possession of the land to Walker in December of 2012 and acted in a manner inconsistent with the June 2010 contract. See McLemore, 827 N.E.2d at 1141.

Finally, we note Mitchell's additional argument that the trial court's judgment erroneously deprives him of his equity in the property. This is neither here nor there in light of the court's findings that Mitchell intentionally relinquished his rights to the property. Again: "Forfeiture may be considered an appropriate remedy only in the limited circumstances of: (1) an abandoning or absconding vendee or (2) where the

9

vendee has paid a minimal amount and the vendor's security interest in the property has been jeopardized by the acts or omissions of the vendee." Id. at 1140. As the trial court found against Mitchell on the first prong of this test, whether Mitchell would have satisfied the alternative, second prong is irrelevant.

In sum, the evidence supports the trial court's findings that Mitchell intentionally relinquished his rights to the property in December of 2012, and the court's findings support its judgment. Thus, we cannot say that the trial court's judgment for Walker on Mitchell's complaint is clearly erroneous.

Affirmed.

BAILEY, J., and PYLE, J., concur.