R. Burdette POWERS and Mildred
Powers, Husband and Wife,
Plaintiffs-Appellants,

v.

Lee Ellen FORD and Geneva Ford,
Defendants-Appellees.

No. 3–279A38.

Court of Appeals of Indiana,
Third District.

Jan. 29, 1981.

John Martin Smith, Smith & Atz, Auburn, for plaintiffs-appellants.

David A. Kruse, Kruse & Kruse, Auburn, for defendants-appellees.

GARRARD, Judge.

The appellants, R. Burdette Powers and Mildred Powers (Powers), appeal from a judgment of the Steuben Circuit Court in favor of the appellees, Lee Ellen Ford and Geneva Ford (Ford). We affirm.

*Facts*

The record in this case reveals that the "Record-Herald," a weekly newspaper published in Butler, Indiana, was owned and operated by the family of R. Burdette Powers. On September 23, 1972, Powers contracted to sell the newspaper and all assets thereof, including real estate, fixtures and equipment, goodwill, and a Second Class Newspaper Mailing Permit, to Lee Ellen Ford for $60,000.00. Ford took possession of the newspaper after the agreement was signed.

The contract, prepared by Ford, an attorney, provided for payment of the purchase price in monthly installments. For a short period, Ford made the payments on time but as the newspaper's gross income declined, she fell behind. By April of 1976, Ford had paid only $39,000 of the agreed purchase price. In July of 1976, she attempted to sell the newspaper assets to a third party, in violation of the contract. By the end of the month, Ford had abandoned the newspaper altogether, and Powers moved to save it. He hired another publisher to operate it temporarily. In December of 1976, Powers retook possession of the newspaper building. Finally, upon the request of Powers, and pursuant to a forfeiture clause in the original contract, Ford conveyed her remaining interest in the newspaper to Powers by quitclaim deed.

After taking these steps, Powers resold the newspaper's remaining assets to Max Gray, realizing proceeds from the sale of $14,155.69. It may be noted that the trial court found this sale was not conducted according to normally accepted foreclosure procedure (S.F. 39). However, Powers maintains the sale was conducted in a reasonable manner under the circumstances.

As can readily be seen, Powers has not received the $60,000 Ford agreed to pay for the newspaper in the original contract between the parties. He received a total of $53,155.69 ($39,000 from Ford, $14,155.69 from Max Gray). Powers initiated this action, seeking a deficiency judgment against Ford for the difference in the amount origi-

nally promised and the amount actually collected, a total of $6,844.31, plus accrued interest and attorney's fees.

### The Trial Court's Decision

After trial, judgment was entered for the defendant, Ford. The trial court based its decision on a finding that the contract between Powers and Ford gave the seller two remedies in the event of buyer default:[1]

1. to sue for the unpaid balance of purchase price and accrued interest, or
2. to declare a forfeiture, retake possession of the property, and retain all payments made.

The trial court also concluded a third remedy, foreclosure, was available to Powers under the contract. The court apparently based this conclusion upon *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, a decision clearly favoring foreclosures over forfeiture.[2]

The trial court found that by choosing to declare a forfeiture, pursuant to option 2 above, the appellants made their choice of remedy, and that they were not entitled to seek additional relief beyond its terms. Further, the court concluded that because Powers had not foreclosed in a proper or commercially reasonable manner, he was not entitled to a deficiency judgment.

### Issues

Powers appeals the unfavorable judgment below. The appeal rests upon two propositions:

1. That the remedies provided in the contract for default by the buyer were not meant to be exclusive remedies—that even after declaring a forfeiture, the seller was free to pursue other remedies, not specifically outlined in the contract, including a deficiency judgment;
2. That *Skendzel* is not applicable to this case, and that therefore the seller is

1. Special Findings 38 and 39.

2. In view of Powers' position throughout the course of this matter, we need not address the

not restricted to foreclosure procedures suggested in *Skendzel*. Rather, the seller is free to sell the repossessed land in any other "reasonable" fashion, and still obtain a deficiency judgment.

However, we need not address the propositions specifically raised by Powers in order to correctly dispose of this appeal. Even assuming, as both Powers and Ford suggest, that *Skendzel* is not applicable to this case, and that the remedies provided in the contract were not intended by the parties to be exclusive, the trial court's decision must be affirmed. We believe that by declaring a forfeiture, thereby cancelling the contract, all further obligations of Ford under the contract were extinguished, and appellants cannot now obtain a deficiency judgment against her.

### Decision

As Powers freely admits (appellants' reply brief, p. 10) he declared a forfeiture pursuant to his contract with Ford. The clauses in question provide:

"20. If the buyers fail to pay any installment of the purchase price or interest thereon as the same becomes due, or any installment of taxes on the real estate, or assessment for a public improvement, or any premium of insurance, as the same becomes due and payable, and if such failure continues for a period of thirty (30) days, or if buyers fail to perform or observe any other condition or term of this agreement and such default continues for a period of thirty (30) days, then the sellers may, at their option, cancel and terminate this agreement and take possession of the real estate, and remove therefrom the buyers or those holding or claiming under them, without notice or demand, notice and demand being hereby expressly waived by buyers.

21. In the event of such cancellation and termination by the sellers, all payments therefore made by the buyers shall

potential applicability of *Skendzel v. Marshall, supra,* to the present contract. *See,* however, *U. S. Aircraft Financing, Inc. v. Jankovich* (1980), Ind.App., 407 N.E.2d 287.

be retained by the sellers, not as a penalty, but as liquidated damages for the breach of this agreement by the buyers."

It is a well established rule of law that:

"A vendor may not pursue inconsistent remedies; he may not proceed on a theory based on affirmation of the contract and at the same time, or at another time, proceed on a theory based on its disaffirmance . . . ."

92 C.J.S. Vendor and Purchaser 376a. See also 23 I.L.E. Sales of Realty § 121.

By its very terms, a forfeiture declared pursuant to the clause above served to "cancel and terminate" the contract thereby disaffirming its continued existence. Powers is not now entitled to a deficiency judgment because to grant it would be to affirm the continued existence of the contract by holding Ford further liable under it.

A number of cases support our holding. For example, see Faysen Lake, Inc. v. Miller (1943), 130 N.J.L. 289, 32 A.2d 506; Abodeely v. Cavras (Iowa 1974), 221 N.W.2d 494; Wollenberger v. Hoover (1931), 346 Ill. 511, 179 N.E. 42, 57; Davies v. Boyd (1963), 73 N.M. 85, 385 P.2d 950; Gruskin v. Fisher (1979), 405 Mich. 51, 273 N.W.2d 893; and Solomon Iron and Metal Co. v. Bradford (1962), 33 Ill.App.2d 452, 179 N.E.2d 697; 77 Am.Jur.2d Vendor and Purchaser 602 at 732. Each case stands for the proposition that one cannot disaffirm a contract and in a later proceeding seek to affirm it. A number of the cases speak specifically to attempts to obtain specific performance or the balance of an unpaid purchase price after declaring a forfeiture. The rationale expressed in these cases is equally applicable to subsequent attempts to obtain a deficiency judgment, which is merely an attempt to force the defaulting buyer to honor his original commitment while taking into account the effects of a subsequent sale to a third party.

In Faysen Lake, Inc. v. Miller, supra, the buyer defaulted on an installment land contract. The seller enforced a forfeiture clause, and kept the payments already received as liquidated damages. When the seller later brought an action for the unpaid purchase price, the court said:

"By the course thus taken, the vendor elected to rescind the contract of sale; and it thereby lost the right to sue upon the contract for the recovery of the unpaid installments of the purchase price, whether accrued or not. The forfeiture clause was incorporated in the contract for the benefit of the vendor; and, upon the vendees' default, the vendor had the option to invoke the remedy thus provided or to demand performance of the contract. Having elected to avoid the contract for the vendees' failure of performance, and to eject them from the lands as trespassers, the vendor is now precluded from suing under the contract to recover the purchase price. These are inconsistent remedies . . . . There cannot be an obligation to pay the stipulated installments of the purchase price where there has been an end to the vendor's correlative contractual duty to make a conveyance of the lands."

32 A.2d at 507.

In Abodeely v. Cavras, supra, a vendor sold real estate by installment contract. When the vendee fell behind in making payment, the vendor declared a forfeiture. One year later, the vendor sued for specific performance of the contract. The court noted that when the vendee defaulted, the vendor had several options. However, the court noted:

"When he exercises the option given him under the contract to declare a forfeiture and thus terminate the contract, the vendor cannot, in respect to this same default, thereafter change his position and at the same time or at another time proceed on a theory based on affirmance by suing for damages for breach of the contract or for specific performance since one is precluded from pursuing inconsistent remedies. The remedy of the vendor by way of forfeiture of the contract and the continued liability of the purchaser for the purchase money are totally inconsistent and may not both be pursued."

221 N.W.2d at 498.

Finally, we note Gruskin v. Fisher, supra, where the court, though concluding a for-

feiture had not yet occurred, recognized the general rule that one may not forfeit a contract and thereafter expect to enforce it. The court observed that once a land contract seller had taken *possession* of the property pursuant to a forfeiture, he was no longer entitled to seek a foreclosure. In a concurring opinion, Justice Moody said:

"None of the parties disputes the long-established and well-settled common law rule that a vendor's forfeiture of a defaulted land contract constitutes an election of remedies which precludes subsequently seeking a foreclosure and deficiency judgment based upon the contract.... The rationale supporting this rule is the legal inconsistency of extinguishing the contract through forfeiture and then attempting to resurrect and enforce that contract through foreclosure."

273 N.W.2d at 903.

In this case, Powers invoked the forfeiture clause and cancelled the contract. He may not now obtain a deficiency judgment which would hold Ford further liable on that same contract.

Affirmed.

HOFFMAN, P. J., concurs.

STATON, J., concurs in result and files separate opinion.

STATON, Judge, concurring in result.

I concur in result. Although this transaction appears to be an excessive forfeiture, sixty-five per cent of the purchase price under the contract had been paid, there is

very persuasive evidence that Fords abandoned the real and personal property to be purchased under the terms of the conditional sales contract.[1] *U. S. Aircraft Financing, Inc., v. Jankovich* (1980), Ind.App., 407 N.E.2d 287. Because there is an abandonment of the real and personal property covered by the conditional sales contract, forfeiture does not do violence to *Skendzel v. Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641. Therefore, the equitable principles in *Skendzel* are not applicable.

1. The trial court made these findings:

"28. That the Defendants abandoned said assets as of July 30, 1976, and exercised no care or control over said assets thereafter.

\* \* \* \* \* \*

"31. That Defendants did not provide the building situated upon said real estate with fuel and that the furnace ran out of fuel on December 24, 1976, and Plaintiffs retook possession and provided said premises with fuel, and repaired the furnace which prevented damage by the freezing of pipes.

\* \* \* \* \* \*

"34. At the request of Plaintiffs, Defendants conveyed and transferred to Plaintiffs by Quitclaim Deed dated February 2, 1977 (Defendant's Exhibit B) all of Defendants interest in the real estate and said tangible and intangible personal property.

Defendants specifically reserved any of their rights to object or any of their defenses in this case when giving said Quitclaim Deed to Plaintiffs.

The Quitclaim Deed stated:

'Express Purpose: By execution of this quit-claim deed, grantors acknowledge grantees took possession of said property described herein and have no objection to grantees selling said property to a third party free of any interest therein of grantors. Grantors specifically do not waive any defenses or counterclaim rights existing in C–76–292, Steuben County Circuit Court, against grantees.' "