**ADSIT COMPANY, INC.,**
**Appellant–Plaintiff,**

v.

**Julie Kay GUSTIN and Mary K. Gustin, Appellees–Defendants.**

**No. 18A02–0701–CV–90.**

Court of Appeals of Indiana.

Oct. 16, 2007.

Joseph P. Hunter, Muncie, IN, Attorney for Appellant.

Scott E. Shockley, De Fur Voran LLP, Muncie, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Adsit Company, Inc. (Adsit), appeals the trial court's order entering judgment in Adsit's favor on Adsit's breach of contract complaint against appellees-defendants Julie and Mary Gustin but refusing to award any damages based on Adsit's failure to mitigate its damages. Adsit argues that the trial court erroneously concluded that it was required to mitigate its damages following the Gustins'

wrongful rejection of goods. Additionally, the Gustins cross-appeal, arguing that the trial court did not have personal jurisdiction over them and that it should not have found that they breached the contract given Adsit's alleged breaches of the implied warranty of fitness for a particular purpose and an express warranty.

We find that the trial court had personal jurisdiction over Mary pursuant to a forum selection clause in Adsit's online clickwrap agreement and that it had personal jurisdiction over Julie because Mary acted as Julie's agent when Julie gave her permission to use Julie's credit card number in the online transaction. We also find that Adsit did not breach any warranties and that mitigation of damages was not an accurate way to frame the issue herein. Instead, what must be determined is which party bore the risk of loss of the goods, and we conclude that Adsit bore the risk of loss following its agent's acceptance of the wrongfully rejected goods. Additionally, we find that, inasmuch as Adsit has not proved that it is entitled to damages stemming from the Gustins' breach, the trial court erroneously awarded attorney fees in the amount of $500 to the company. Therefore, we affirm in part and reverse in part.

### FACTS

Adsit is a Muncie-based retailer of new, used, and rebuilt parts and accessories for Mercedes–Benz automobiles. It does business over the phone and the Internet. Prior to placing an online order, a customer must click a button reading "I Accept," which is located at the bottom of a web page describing the company policy. Pl. Ex. 1. Among other things, the policy includes the following terms:

**WARRANTY:**

**Absolutely no refunds or returns.**

**Our warranty is for 30 days on an exchange basis only.**

**All sales are final.**

\* \* \*

**AGREEMENT ON JURISDICTION TO DAMAGES:** [Adsit] and Customers agree that any suit, claim or legal proceedings of any nature between the parties must be filed and prosecuted in Delaware County Indiana and shall be controlled by the laws of the State of Indiana then in effect.... In the event that the buyer fails to pay as agreed, the buyer agrees to pay all attorney fees, court cost[s], expenses and interest incurred by [Adsit] in the collection of all sums.

*Id.* (bold in original). The page of Adsit's website regarding seat upholstery states that

[a]ll seat upholstery is manufactured using the original german leathers or mb tex vinyls to the original pattern for the correct look. Most original colors are available. If you have any questions about the color of your interior, please supply us with your vin# or send a sample of your old interior. All interior items are special order and nonreturnable so please order carefully.

Pl.Ex. 2.

Mary lives in Texas and Julie, Mary's daughter-in-law, lives in Alabama. Julie's husband, Kevin, owns a classic 1967 Mercedes–Benz roadster. On December 15, 2004, Mary placed an order on Adsit's website for two camel-colored leather seat covers and two camel-colored leather armrest covers. Mary also entered a vehicle identification number (VIN) on the website but wrote down an incorrect number. Consequently, when Adsit employees looked at the VIN, they dismissed it because it was not a VIN for a Mercedes–Benz vehicle.

Originally, Mary placed the order on her credit card with instructions to ship the goods to Kevin and Julie. Two days later, an Adsit employee called Mary to inform her that because of a company policy, the credit card to which the order was billed needed to match the address to which it was shipped. Therefore, with Julie's permission, Mary provided Adsit with Julie's credit card number and information. Julie had no direct contact with Adsit. After verifying the order, Adsit placed an order for camel-colored leather seat and armrest covers from its supplier, German Auto Tops in North Hollywood, California.

Because the factory was closed for the holidays, Julie and Kevin did not receive the goods until January 22, 2005. At that time, they discovered that the color of the seat covers did not match their vehicle's interior.[1] Within six days of receiving the seat covers, Julie and Kevin returned them to the California address from which they were sent. They sent the seat covers via certified United States Mail and received confirmation of delivery. They also reversed the charge on their credit card. A representative of Adsit testified that the company did not receive the goods.

On July 12, 2005, Adsit filed a breach of contract complaint against Julie, later adding Mary as a defendant, seeking $1100 for the price of the seat covers, $750 in attorney fees, and $600 in collection costs. Following a November 3, 2006, bench trial, the trial court entered its order on December 11, 2006, entering judgment for Adsit but further finding that the company had "failed to mitigate damages by securing the property after the defendant returned such. Therefore [Adsit] is only entitled to recover attorney fees of $500.00." Appel-

lant's App. p. 59. Adsit now appeals and the Gustins cross-appeal.

## DISCUSSION AND DECISION

### I. Cross–Appeal

#### A. Personal Jurisdiction

 As a threshold matter, we must consider whether the trial court properly exercised personal jurisdiction over the Gustins. Jurisdiction is presumed in Indiana; consequently, the plaintiff bears no burden to prove jurisdiction unless and until the defendant raises the issue. *Sohacki v. Amateur Hockey Ass'n of Ill.*, 739 N.E.2d 185, 188 (Ind.Ct.App.2000). We apply a de novo standard of review to a challenge to the trial court's jurisdiction, bearing in mind that the challenging party—usually, as here, the defendant—bears the burden of establishing the lack thereof by a preponderance of the evidence. *Id.*

 Parties may consent by contract to the exercise of personal jurisdiction by courts that otherwise might not have such jurisdiction. *Mechs. Laundry & Supply, Inc. v. Wilder Oil Co., Inc.*, 596 N.E.2d 248, 251 (Ind.Ct.App.1992). Forum selection clauses—even those occurring in form contracts—are enforceable

if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching such that the agreeing party would be deprived of a day in court. Additionally, the provision must have been freely negotiated. Thus, it is well settled that to determine the validity of a forum selection clause, we are to examine whether the clause is freely negotiated and just and reasonable under the circumstances.

---

1. Julie and Kevin also discovered that there were no armrest covers included in the package. Subsequently, Kevin received a credit on his credit card for the amount of the armrest covers. Apparently, the factory no longer made camel-colored armrest covers.

*Farm Bureau Gen. Ins. Co. of Mich. v. Sloman*, 871 N.E.2d 324, 329 (Ind.Ct.App. 2007).

Here, Adsit's policy contains a forum selection clause providing that "any suit, claim or legal proceedings of any nature between the parties must be filed and prosecuted in Delaware County Indiana and shall be controlled by the laws of the State of Indiana...." Pl.Ex. 1. To complete the transaction, Mary was required to click on a button reading "I Accept" that was placed at the bottom of the webpage containing the policy. *Id.*

■ This type of web-based contract is commonly referred to as a "clickwrap" agreement. *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236, 2007 WL 966011, No. 06–2540, *6 (E.D.Pa.2007). A clickwrap agreement

appears on an internet webpage and requires that a user consent to any terms and conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction. Even though they are electronic, clickwrap agreements are considered to be writings because they are printable and storable.

To determine whether a clickwrap agreement is enforceable, courts presented with the issue apply traditional principles of contract law and focus on whether the plaintiffs had reasonable notice of and manifested assent to the clickwrap agreement....

*Id.* (footnote and internal citations omitted).

Here, as in *Feldman*, the Adsit policy gave reasonable notice of its terms. To complete a transaction, a user must accept the policy, the text of which is immediately visible to the user. The user is required to take affirmative action by clicking on the "I Accept" button; if the user refuses to

agree to the terms, she cannot engage in the transaction. The entire policy is essentially three short paragraphs—one-half of a page. Moreover, the paragraph that contains the forum selection clause begins with the following heading, which is bolded and in all capital letters: **"AGREEMENT ON JURISDICTION TO DAMAGES[.]"** Pl.Ex. 1.

Under these circumstances, we find that Mary had reasonable notice of and manifested assent to the clickwrap agreement containing the forum selection clause. We also find that the contract was not an impermissible contract of adhesion because she was capable of understanding its terms, consented to them, and could have rejected the agreement with impunity. Finally, we note that Mary was not deprived of her day in court, inasmuch as she and Julie retained counsel, requested and obtained permission to participate telephonically in hearings, and did, in fact, participate telephonically. Given these facts, we find that the forum selection clause contained in Adsit's clickwrap agreement was valid, enforceable, and binding on Mary. *See Feldman*, 513 F.Supp.2d at 243, 2007 WL 966011, *13 (enforcing forum selection clause contained in a clickwrap agreement); *Koresko v. RealNetworks, Inc.*, 291 F.Supp.2d 1157, 1163 (E.D.Cal.2003) (same); *DeJohn v. The .TV Corp. Int'l*, 245 F.Supp.2d 913, 918–19 (N.D.Ill.2003) (same); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1008–09 (D.C.2002) (same); *Am. Online, Inc. v. Booker*, 781 So.2d 423, 425 (Fla.App.2001) (same).

■ Whether the forum selection clause also binds Julie is a closer call. Julie's only role in the transaction was to provide Mary with her credit card number after Adsit informed Mary that company policy required that a customer's shipping and billing addresses be the same. Mary then placed the order, using Julie's credit card

number and address to complete the transaction. Thus, Julie did not personally accept Adsit's policy, including the forum selection clause.

■ If Mary was acting as Julie's agent, however, then Julie is bound to the terms of the contract, including the forum selection clause. *See Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.,* 773 N.E.2d 881, 888 (Ind.Ct.App.2002) (holding that a principal is bound by a contract entered into by the principal's agent on her behalf if the agent had authority to bind the principal). In determining whether a person is acting as an agent, our Supreme Court has recognized three classifications of authority: (1) actual authority; (2) apparent authority; and (3) inherent authority. *Gallant Ins. Co. v. Isaac,* 751 N.E.2d 672, 675 (Ind.2001). Authority can be express or implied and may be conferred by words or other conduct, including acquiescence. *Koval v. Simon Telelect, Inc.,* 693 N.E.2d 1299, 1302 (Ind.1998). Actual authority "is created 'by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account.'" *Gallant,* 751 N.E.2d at 675 (quoting *Menard, Inc. v. Dage–MTI, Inc.,* 726 N.E.2d 1206, 1210 (Ind. 2000)).

Here, although the record does not reveal the precise nature of the communication between Mary and Julie regarding the purchase from Adsit, it is undisputed that Julie did, in fact, provide Mary with her credit card number so that Mary could complete the purchase. We find that under these circumstances, Julie's conduct was sufficient to give Mary actual authority to engage in the transaction on her behalf. Consequently, Julie is likewise bound by Adsit's forum selection clause. In sum, we find that the trial court properly exercised personal jurisdiction over Mary and Julie.

**B. Breach of Warranty Defenses**

■ Mary and Julie next argue that the trial court should have found that Adsit breached the warranty of fitness for a particular purpose and an express warranty "that if the customer had any doubt about the correct color, the customer should provide the VIN and Adsit would use that to match the colors." Appellees' Br. p. 8.

Indiana Code section 26–1–2–315 provides that "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose." The comment elaborates that a

"particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

*Id.* cmt. 2.

Here, the Adsit products in question are generally used as additions to the interior décor of Mercedez–Benz vehicles. The Gustins insist that at the time of contracting, Adsit "knew [that the Gustins] intended for these goods to be used for the particular purpose of restoration of that car with that ID number . . . ." Appellees'

Br. p. 10. To the contrary, however, there is no evidence in the record that Adsit was aware that the Gustins intended the products to be used in the restoration of a 1967 Mercedez–Benz roadster. Consequently, we find that the trial court properly concluded that Adsit did not breach the warranty of fitness for a particular purpose.

 The Gustins also argue that Adsit breached its express warranty that if the customer provides the vehicle's VIN, Adsit will match the color of the vehicle's interior. The company's policy instructs the customer that "[i]f you have any questions about the color of the interior, please supply us with your VIN # or send a sample of your old interior." Pl.Ex. 1. Assuming for argument's sake that this statement rises to the level of an express warranty, we observe that it was the *Gustins* who included an erroneous VIN as part of the transaction. Adsit was not obligated by virtue of the contract or otherwise to correct the Gustins' error. Inasmuch as the VIN provided by the Gustins to Adsit did not correspond to a Mercedez–Benz vehicle, we cannot conclude that Adsit breached an express warranty by providing seat covers that did not precisely match the interior of the Gustins' vehicle.

## II. Appeal

### I. Mitigation of Damages

 Adsit appeals the trial court's conclusion that it failed to mitigate its damages such that it is not entitled to recover damages as a result of the Gustins' breach. Our review of a damages award is limited. We neither reweigh the evidence nor judge the credibility of witnesses, and will reverse an award only when it is not within the scope of the evidence before the factfinder. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC,* 870 N.E.2d 494, 507 (Ind. Ct.App.2007). Our review of questions of law is de novo. *Knoy v. Cary,* 813 N.E.2d 1170, 1171 (Ind.2004).

 Adsit's policy explicitly provides that there are "[a]bsolutely no refunds or returns" and that "[a]ll sales are final." Pl.Ex. 1 (emphasis omitted). Consequently, when the Gustins rejected the goods, they did so wrongfully. Indiana Code section 26–1–2–703 provides that if the buyer wrongfully rejects the goods, the seller has a number of options. Specifically, the seller may:

(a) withhold delivery of such goods;

(b) stop delivery by any bailee as hereafter provided (IC 26–1–2–705);

(c) proceed under IC 26–1–2–704 respecting goods still unidentified to the contract;

(d) resell and recover damages as hereafter provided (IC 26–1–2–706);

(e) recover damages for nonacceptance (IC 26–1–2–708) or in a proper case the price (IC 26–1–2–709);

(f) cancel.

I.C. § 26–1–2–703. Here, Adsit chose to maintain an action for the price of the goods pursuant to Indiana Code section 26–1–2–709, which provides as follows:

(1) When the buyer fails to pay the price as it becomes due, the seller may recover, together with any incidental damages under IC 26–1–2–710, the price:

(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

(2) Where the seller sues for the price, he must hold for the buyer any goods which have been identified to the contract and are still in his control, except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.

(3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (IC 26–1–2–610), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for nonacceptance under IC 26–1–2–708.

Here, the undisputed evidence in the record establishes that after the Gustins wrongfully rejected the goods, they returned them via certified United States mail to the address from which they were shipped—"Adsit Company, Inc.," in North Hollywood, California. Def. Ex. E. The Gustins received confirmation that the goods were, in fact, delivered and accepted at that address. Def. Ex. D. An Adsit representative testified that although the shipping label implied that the goods were shipped from a California address of Adsit, in fact, that business name was included so that the customer would understand that the package was from Adsit. In reality, however, the package was shipped from Adsit's manufacturer, a separate business entity called German Auto Tops. At trial, Adsit's attorney told the trial court that German Auto Tops did not know if it had received the returned goods from the Gustins: "they were unable to tell me that they had them or didn't have them." Tr. p. 105. The trial court concluded that by failing to reclaim and resell the goods, Adsit had failed to mitigate its damages and, as such, was not entitled to damages stemming from the Gustins' breach.

Mitigation of damages is not an accurate way to frame this discussion, inasmuch as the goods were undisputedly lost—Adsit could have neither retained nor resold the missing seat covers. Instead, we must determine whether the Gustins or Adsit bore the risk of the loss of those goods.

It is apparent that after the Gustins received the seat covers, the risk of loss passed to them. I.C. § 26–1–2–509(3) (providing that "the risk of loss passes to the buyer on his receipt of the goods if the seller is a merchant"). What we must resolve is whether, after the Gustins wrongfully rejected the goods and returned them to the address on the shipping label, the risk of loss shifted back to Adsit. Inasmuch as the Gustins' rejection of the goods was wrongful, we fail to see the equity in requiring Adsit to bear the loss of the goods unless and until it had actual or constructive possession thereof. Cf. Ninth St. E., Ltd. v. Harrison, 5 Conn. Cir.Ct. 597, 259 A.2d 772, 774 (1968) (finding that where buyers wrongfully rejected goods, which were lost following the wrongful rejection, buyers bore "[t]he risk of subsequent loss or delay").

Implicit in the trial court's judgment was a conclusion that the Gustins proved that German Auto Tops received the returned goods. Based on the Gustins' testimony, the return receipt, and the equivocal nature of German Auto Tops's statement that it could not say whether it did or did not have the returned goods, we cannot say that the trial court's conclusion that German Auto Tops did, in fact, receive the seat covers was erroneous.

Although Adsit is not actually located in California, we find that it was reasonable for the Gustins to return the goods to the California address on the original shipping label. Moreover, although German Auto

Tops was not normally Adsit's agent for the purpose of accepting returned goods, Adsit's instruction to include its name on the shipping label was an indirect manifestation to the Gustins that the business located at the California address was authorized to accept returned goods. Thus, we conclude that German Auto Tops, acting as Adsit's agent, had apparent authority to accept the returned seat covers. *See Gallant,* 751 N.E.2d at 675 (holding that "apparent authority refers to a third party's reasonable belief that the principal has authorized the acts of its agent; it arises from the principal's indirect or direct manifestations to a third party").

Under these circumstances, we find that when German Auto Tops—Adsit's agent—had actual possession of the returned goods, Adsit, in turn, had constructive possession thereof. At that time, the risk of loss shifted back to Adsit. Given that Adsit bore the risk of loss and that it was otherwise required to resell the goods and credit the Gustins for the value of the resale, *see* I.C. § 26–1–2–709(2), we find that the trial court properly concluded that Adsit is not entitled to damages stemming from the Gustins' wrongful rejection of the seat covers.

 Finally, we turn, sua sponte, to the trial court's award of attorney fees in the amount of $500 to Adsit. The contract provides that "[i]n the event that the buyer fails to pay as agreed, the buyer agrees to pay all attorney fees, court cost[s], expenses and interest incurred by Adsit company *in the collection of all sums.*" Pl.Ex. 1 (emphasis added). Adsit has not, in fact, collected any damages from the Gustins. It attempted to but, as we concluded above, it failed. Inasmuch as Adsit has not proved that it is entitled to collect damages from the Gustins, we cannot conclude that it is entitled to attorney fees pursuant to the parties' contract. Conse-

quently, we reverse the portion of the trial court's judgment awarding attorney fees to Adsit.

In sum, we conclude that the trial court properly exercised personal jurisdiction over the Gustins and that Adsit did not breach any express or implied warranties. Furthermore, the Gustins breached the contract by wrongfully rejecting the seat covers when the contract explicitly provided that all sales were final. We also conclude that the trial court properly found that Adsit is not entitled to damages but improperly awarded attorney fees to the company.

The judgment of the trial court is affirmed in part and reversed in part.

BAILEY, J., and VAIDIK, J., concur.