Ronald HOOKER, Appellant–Plaintiff,

v.

Jigme K. NORBU and Yaling Huang, Appellees–Defendants.

No. 53A01–0804–CV–180.

Court of Appeals of Indiana.

Dec. 11, 2008.

---

C. Richard Marshall, Columbus, IN, Attorney for Appellant.

Craig Benson, Bloomington, IN, Attorney for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-plaintiff Ronald Hooker appeals the trial court's order calculating the damages owed to Hooker on his complaint for breach of contract against appellees-defendants Jigme K. Norbu and Yaling Huang (collectively, the appellees). Hooker argues that the trial court erroneously neglected to include interest payments that should have been made by the appellees as part of the damages award. Finding that Hooker elected the remedy of forfeiture rather than foreclosure and is therefore prohibited from recovering the missed payments, we affirm.

### FACTS

On February 1, 1995, Hooker and Huang—Norbus wife—entered into an installment real estate contract (the Contract) for the purchase of restaurant real estate in Columbus. The sale price of the real estate was $338,000 plus 11.5% interest, and the parties agreed that the appellees would make no down payment and would make monthly payments of $3,625.86 towards the principal and interest beginning on April 1, 1995. The appellees each signed a guaranty that guaranteed their performance of the Contract.

The appellees occupied the real estate beginning in April 1995, operating the Snow Lion Columbus Tibetan restaurant at that location. They made the required monthly payments through October 1995. After that time, they made only partial payments. In 1996, they made no payments for six months and only partial payments for the remaining six months. In 1997, they made no payments. The appellees abandoned the property and returned the keys to Hooker in April 1997.

According to Hooker's calculations, as of April 1, 1997, the portion of the appellees'

Contract debt consisting solely of the 11.5% interest totaled $39,515.70. Hooker then added 8% per annum interest in the amount of $33,851.78. The balance on the principal was $335,173.81, inasmuch as all payments made between January 1996 and April 1997 were fully allocated to interest.

On December 29, 2005, Hooker filed a complaint against the appellees for, among other things, their default on the Contract. In the complaint, Hooker invoked the Contract's acceleration clause and asked for, among other things,

1. The total financial obligations presented in said contract including unpaid principal owing, interest, taxes, insurance, penalties, fines, etc.;

2. The value of personal property improperly and illegally removed from, and stolen and converted from, said Columbus business premises;

3. Payment or reimbursement of all expenses, fees, costs, and attorney fees incurred in bringing this action....

Appellant's App. p. 14. The appellees did not answer the complaint, and on June 12, 2007, the trial court entered a default judgment against the appellees and scheduled a hearing for Hooker to present his evidence of damages. At the December 13, 2007, and January 3, 2008, damages hearings—at which the appellees appeared and were represented by counsel—Hooker presented evidence reflecting the payments made and not made by the appellees and calculations of the missed payments, interest owing, and attorney fees and expenses.

On February 4, 2008, the trial court issued a money judgment and order forfeiting the real estate contract, finding, in pertinent part, as follows:

The Real Estate Contract required the [appellees] to pay $338,000.00 by making monthly payments in the amount of $3,625.86 pursuant to an amortization schedule. Interest accrued on the unpaid balance at the rate of [11.5%] per annum, compounded monthly....

The [appellees] did not pay the payments as agreed. After the [appellees] paid the regular monthly amount of $3,625.85 on October 1, 1995, the balance due under the Real Estate Contract never went down because the [appellees'] payments were not enough to cover the interest that continued to accrue....

[Hooker] paid real estate taxes that should have been paid by [the appellees] while [the appellees] occupied the building. Those taxes paid by [Hooker] total $6,531.31 as of December 1, 1996. Interest on that sum of $6,531.31 for the eleven years from December 1, 1996 through December 1, 2007, at eight percent (8%) interest, not compounded, is $5,747.55.

* * *

The court finds that [Hooker] has proved by a preponderance of the evidence that [the appellees] removed ... personal property worth $14,677.73 from the ... restaurant building....

[Hooker] did not present evidence that his real estate declined in value, or that the [appellees] committed waste, other than the removal of personal property and fixtures as set out in this order. There was no evidence about the rental value of the real estate.

The Real Estate Contract should be declared forfeited, but [Hooker] is not entitled to recover the missed payments that the [appellees] did not make while they occupied the building, or interest on those missed payments.

* * *

... [The appellees] should be ordered to pay [Hooker's] attorney fees of $9,751.07.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that [Hooker] have and recover a money judgment from [the appellees] in the sum of [$139,684.53 [1]], together with attorney fees in the sum of [$9,751.07], the costs of this action, and interest at the rate of [8%] per annum from the date of judgment. The [Contract] ... is forfeited.

*Id.* at 6–7.

On March 4, 2008, Hooker filed a motion to correct error, arguing that the trial court had erred by (1) failing to award damages for the appellees' removal of the restaurants air conditioning unit; (2) failing to award 1997–2008 interest for the personal property removed by the appellees; and (3) failing to award the unpaid interest on the Contract. On March 13, 2008, the trial court granted Hooker's motion in part, finding as follows:

... [Hooker's] judgment should include the additional amount of $2,800.00 for the roof air conditioning unit. [Hooker] should recover the sum of $17,477.73 to compensate [Hooker] for the personal property that was removed from [Hooker's] building.

\* \* \*

The court further finds that [Hooker] is entitled to interest at the rate of [8%] on that sum of $17,477.73 from April 1, 1997 through February 4, 2008, in the sum of $15,165.90.

[Hooker] also seeks a judgment for the monthly payments the [appellees] did not pay while they occupied the building pursuant to the real estate contract. [Hooker] likens those payments to rent. [Hooker] did not allege that the real estate was worth less than the con-

tract purchase price when [Hooker] retook possession after the [appellees] vacated. [Hooker] has not alleged that the [appellees] committed waste, other than the removal of personal property. [Hooker] did not elect to proceed as if he held a mortgage. The court finds that [Hooker] is not entitled to keep the real estate and also to collect unpaid payments under the contract. For that reason [Hooker's] motion to correct errors is in all other respects denied.

*Id.* at 8–9. Hooker now appeals.

## DISCUSSION AND DECISION

As we consider Hooker's argument that the trial court erroneously calculated the damages owed by the appellees, we observe that our review of a damages award is limited. We neither reweigh the evidence nor judge the credibility of witnesses, and will reverse an award only when it is not within the scope of the evidence before the factfinder. *Adsit Co., Inc. v. Gustin,* 874 N.E.2d 1018, 1025 (Ind. Ct.App.2007). We review questions of law de novo. *Id.*

Forfeiture is defined as "[t]he divestiture of property without compensation." Blacks Law Dictionary 661 (7th ed.1999). In other words, " '[f]orfeiture terminates an existing contract without restitution, while rescission of such contract terminates it with restitution and restores the parties to their original status.' " *Ogle v. Wright,* 172 Ind.App. 309, 315, 360 N.E.2d 240, 244 (1977) (quoting 17A C.J.S. Contracts § 406 (1963)). Our Supreme Court has cautioned that forfeitures are generally disfavored by law because a significant injustice can result. *Skendzel v. Marshall,* 261 Ind. 226, 240, 301 N.E.2d 641, 650 (1973). Consequently, forfeitures are appropriate only "in the

---

1. Hooker's complaint also contained a claim for damages not relevant to this appeal; the amount of those damages was included in the trial court's total.

limited circumstances of: (1) an abandoning or absconding vendee or (2) where the vendee has paid a minimal amount and the vendors security interest in the property has been jeopardized by the acts or omissions of the vendee." *McLemore v. McLemore*, 827 N.E.2d 1135, 1140 (Ind.Ct.App. 2005) (applying *Skendzel*, 261 Ind. at 240, 301 N.E.2d at 650).

■ Here, Hooker had two options, given the appellees' contractual default. He could have proceeded as though he had a mortgage, enforced and accelerated the Contract, and eventually sought foreclosure if the appellees refused or were unable to pay the full amount due. Or, he could have sought the remedy of forfeiture, cancelling the Contract, retaining the payments made by the appellees, retaining the real estate, and recouping any actual damages he sustained as a result of the transaction. Hooker elected to pursue the latter course of action.

The Contract contemplates the possibility of forfeiture:

In the event Purchaser deserts or abandons the Real Estate or commits any other willful breach of this Contract which materially diminishes the security intended to be given to Seller under and by virtue of this Contract, then it is expressly agreed by Purchaser that, unless Purchaser shall have paid more than fifteen percent (15%) of the Purchase Price, *Seller may, at Seller's option, cancel this Contract and take possession of the Real Estate* and remove Purchaser therefrom ... without any demand and to the full extent permitted by applicable law. In the event of Seller's cancellation upon such default by Purchaser, *all rights and demands of Purchaser under this Contract and in and to the Real Estate shall cease and terminate,* and Purchaser shall have no further right, title or interest, legal or equitable, in and to the Real Estate, and *Seller shall have the right to retain all amounts paid by Purchaser toward the Purchase Price as an agreed payment for Purchasers possession of the Real Estate prior to such default.* Such retention shall not bar Seller's right to recover damages for unlawful detention of the Real Estate after default, for any failure to pay taxes or insurance, for failure to maintain the Real Estate at any time, for waste committed thereon or for any other damages suffered by Seller, including reasonable attorney's fees incurred by Seller in enforcing any right hereunder or in removing any encumbrance on the Real Estate made or suffered by Purchaser.

All of Seller's remedies shall be cumulative and not exclusive. Failure of Seller to exercise any remedy at any time shall not operate as a waiver of the right of Seller to exercise any remedy for the same or any subsequent default at any time thereafter.

Appellant's App. p. 36–37 (emphases added). It is undisputed that the appellees abandoned the property and returned the keys to Hooker in April 1997. At that time, they had paid less than one percent of the purchase price.[2] Under these circumstances, the Contract and the *Skendzel* guidelines render forfeiture an appropriate remedy.

Hooker first argues that the trial court should have awarded the outstanding interest payments for the time in which the appellees occupied the real estate but neglected to make sufficient payments. He

---

**2.** The majority of the appellees' payments covered the accumulating interest rather than the principal.

contends that the trial court should have enforced the bargained-for terms of the Contract, including the 11.5% interest provision, and highlights the provision stating that the Seller's remedies are cumulative. This argument, however, misses the point. As noted above, Hooker elected to have the Contract forfeited—cancelled. Having made that decision, he is no longer entitled to enforce it. He is entitled to retain the appellees' payments made prior to their abandonment of the real estate as compensation for that time. He is entitled to recover for his actual losses—the tax payments he was forced to make, the personal property taken by the appellees, and his attorney fees and costs. Hooker offered no evidence that he suffered any loss in the value of the real estate or that the appellees committed waste thereon, so he is not entitled to damages for those reasons.[3] Thus, the trial court properly concluded that, having elected the remedy of forfeiture rather than foreclosure, Hooker was not entitled to recover the appellees missed payments or the interest on those payments.[4]

Hooker also argues that the entry of the default judgment against the appellees necessarily establishes liability for their breach. The appellees' liability is not relevant, however, inasmuch as they have never contested that issue. The *only* issue at hand is the proper way of calculating Hooker's damages, and the entry of default does not aid us in that regard.

The judgment of the trial court is affirmed.

MATHIAS, J., concurs.

BROWN, J., dissents with opinion.

BROWN, Judge dissenting.

I respectfully dissent. I disagree with the majority's holding that by electing to have the Contract forfeited, Hooker may not enforce its terms with respect to outstanding payments for the time in which the appellees occupied the real estate but neglected to make full, or, in some months, even partial payments. I believe that the forfeiture provision at issue terminates the Contract prospectively and has no bearing on Hooker's right to collect payments for the appellees' prior occupation of the real estate. The Contract sets forth several events of default. One such event is failure to pay. Another is the purchasers abandonment of the real estate.

The Contract sets forth several events of default. One such event is failure to pay. Another is the purchaser's abandonment of the real estate.

---

3. To the extent that Hooker quarrels with the trial courts statement that he had offered no evidence of the property's rental value, we note that we need not and do not base our decision herein on that fact. The rental value would, in theory, have been relevant to establish what Hooker would have been paid had he rented the property to a tenant during the months when the appellees neglected to make full—or any—payments. But as noted above, the Contract states that "Seller shall have the right to retain all amounts paid by Purchaser toward the Purchase Price as an agreed payment for Purchaser's possession of the Real Estate prior to such default." Appellant's App. p. 36. Thus, the property's rental value notwithstanding, Hooker has necessarily been compensated for those months.

4. We caution that the result reached herein is limited to these facts; specifically, the vendor permitted the vendees to remain on the real estate and in default for two years without enforcing his rights under the then-existing contract. Then, years later, he decided to cancel the contract rather than enforce it. *See Powers v. Ford*, 415 N.E.2d 734, 737 (Ind. Ct.App.1981) (setting forth "the general rule that one may not forfeit a contract and thereafter expect to enforce it"). Under these circumstances, he is not entitled to payments for those two years.

Appellees failed to make the required monthly payments beginning in November 1995, so, according to the contract, they were in default at that time. In 1996, they made no payments for six months and only partial payments for the remaining six months. In 1997 they made no payments and abandoned the property in April of that year. Between November 1995 and April 1997 they had possession of the real estate without fully paying for such possession.

As for the payments actually made by appellees, the Contract provides that "Seller shall have the right to retain *all amounts paid* by Purchaser toward the Purchase Price as an agreed payment for Purchasers possession of the Real Estate *prior to such default.*" Appellant's Appendix at 36 (emphasis supplied). This language gave Hooker the right to retain the actual payments that had been made prior to the default, which default first occurred in November 1995 and then occurred again in each month thereafter that full payment was not made. The Contract also states that "Such retention shall not bar Seller's right to recover damages for unlawful detention of the Real Estate *after default.*" *Id.* (emphasis supplied). I believe the majority incorrectly construes the phrase "after default" to mean "after abandonment" and in so doing ignores the obvious damage the Seller has suffered under the contract when appellees continued to possess the real estate without making the required payments for such possession.

Under the majority's interpretation, if the appellees had made all the payments they were required to make but then abandoned the property, Hooker would be entitled to keep those payments. I agree that this is what the Contract says. But I disagree that the Contract says that appellees are relieved from making those payments during the time they are in posses-

sion and prior to any abandonment and cancellation of the Contract. To hold as the majority does rewards the appellees for failing to make the required contractual payments while they possessed the real estate. Appellees are thereby rewarded for their own default.

Further, the Contract provides that "All of Sellers remedies shall be cumulative and not exclusive. Failure of Seller to exercise any remedy at any time shall not operate as a waiver of the right of Seller to exercise any remedy for the same or any subsequent default at any time thereafter." *Id.* at 37. Therefore the seller could retain all amounts paid by the purchaser prior to and after each occurrence of default; recover damages for unlawful detention of the real estate after default; recover unpaid taxes, insurance, for waste committed on the real estate, and "... for any other damages suffered by Seller...." *Id.* at 36.

As held in *Powers v. Ford,* 415 N.E.2d 734, 736 (Ind.Ct.App.1981), forfeiture serves to cancel and terminate the *continued* existence of the contract at issue. However the seller is not prevented from claiming damages incurred prior to the contract's termination.

As a further note, both the trial courts and the majority's reference to a lack of evidence as to any loss in value of the real estate is misplaced. Whereas here forfeiture was the elected remedy, the seller cannot claim a deficiency for any difference in value of the property from the time the contract is entered into and the time of forfeiture. Any possible decrease in the value of the property is irrelevant.

For these reasons I respectfully dissent and would reverse the trial court's holding that Hooker is not entitled to recover the

622

payments appellees failed to make while they occupied the real estate.