FILED

Sep 27 2018, 6:23 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANTS

Justin K. Clouser
Jeffrey M. Miller
Noel Law
Kokomo, Indiana

ATTORNEY FOR APPELLEE

T. Andrew Perkins
Peterson Waggoner & Perkins, LLP
Rochester, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Dr. Curtis K. Deason and Connie S. Deason, <br><br> *Appellants-Defendants,* <br><br> v. <br><br> Bill R. McWhorter and Heather McWhorter Revocable Living Trust, Dated January 24, 2003, <br><br> *Appellee-Plaintiff.* | September 27, 2018 <br><br> Court of Appeals Case No. 18A-PL-270 <br><br> Appeal from the Howard Superior Court <br><br> The Honorable A. Christopher Lee, Special Judge <br><br> Trial Court Cause No. 34D02-1505-PL-407 |

**Kirsch, Judge.**

[1] Dr. Curtis K. Deason and Connie S. Deason (together, "the Deasons") appeal the trial court's order awarding judgment in favor of the Bill R. McWhorter and Heather McWhorter Revocable Living Trust, Dated January 24, 2003, ("the Trust") for damages after the Deasons defaulted on a contract for sale of real

estate. The Deasons raise several issues for our review that we consolidate and restate as: whether the trial court inappropriately awarded the Trust a remedy of foreclosure in contradiction to the language of the contract for sale of real estate.

We reverse and remand.

## Facts and Procedural History

On March 18, 2009, the Deasons and the Trust entered into a Conditional Contract for Sale of Real Estate ("the Contract") to facilitate the Deasons' purchase of real property including a residence located at 3473 S. 150 E. in Kokomo, Indiana ("the Property") for the amount of $490,000.00. Over the course of several years, the Deasons made a total of thirty-seven installment payments of $2,923.31 each, as well as a down payment and earnest money payment of $25,500.00. *Appellants' App. Vol. 2* at 81. The remaining balance on the Contract was $462,500.00. *Id.* The total of all installment payments towards the value of the Contract was $108,162.47. *Id.* The remaining balance on the Contract after all payments were applied equaled $445,442.07, approximately 4% of the total purchase price. *Id.* at 82.

Pursuant to the Contract, the entire remaining balance owed was due in a single balloon payment on April 18, 2012. *Id.* at 58. The Deasons were unable to make the balloon payment and, instead, tendered a regular monthly payment, which breached the Contract. At trial, the parties' testimony diverged on the topic of whether Bill McWhorter ("McWhorter"), as trustee, was informed of

the Deasons' intent to leave the Property. McWhorter testified that the Deasons never asked him about staying on the Property even though they could not pay the balloon payment and that the Deasons never told him that they would be leaving. *Tr. Vol. 2* at 119-20. McWhorter testified that the only thing he told the Deasons was "we have to live by what's in the [C]ontract." *Id.* at 119. Curtis Deason testified that he informed McWhorter that the Deasons would be leaving and stated that McWhorter told them to leave the premises by May 18, 2012. *Id.* at 136-37. The Trust, through McWhorter, took possession of the Property shortly after the Deasons left on or around May 18, 2012. *Id.* at 59. After the Deasons moved from the Property, McWhorter had the locks changed, and he began living in the home. *Id.* at 121. Since May 2012, when McWhorter took possession of the Property, it has been titled in his name alone. *Id.* at 59, 130.

[5] On May 27, 2015, the Trust filed a complaint against the Deasons for damages resulting from the Deasons' breach of the Contract. The Trust sought foreclosure and a judgment consisting of "the outstanding unpaid principal balance, together with interest from and after the date of the default, late charges, default-related expenses and advances, reasonable attorney fees and costs of this action, and all other expenses incurred in connection with this cause." *Appellants' App. Vol. 2* at 28. A bench trial was held on October 17, 2017. At trial, the Trust presented two expert witnesses to testify regarding the value of the Property, and one of the experts testified that the Property had an appraised value of $316,000.00. *Tr. Vol. 2* at 38. To support their valuation of

the Property, the Deasons submitted an order from McWhorter's dissolution case that ordered that the Property be listed for sale in the amount of $450,000.00 and the Trust's insurance policy on the Property. *Appellants' App. Vol. 2* at 45; *Tr. Vol. 2* at 127.

The trial court also heard evidence of physical damage that the Trust discovered after it took possession of the Property from the Deasons. Much of this evidence came in over the Deasons' continuing objection. Additionally, the Trust offered evidence of the attorney fees it had incurred in bringing the breach of contract action. On January 11, 2018, the trial court issued its "Judgment, Findings of Fact and Conclusions of Law," which entered judgment for the Trust and against the Deasons in the amount of $153,335.24 and foreclosed and extinguished the Deasons' interest in the Property. *Appellants' App. Vol. 2* at 25. The trial court reached this amount by applying the balance of the Contract purchase price, unpaid taxes, repairs, and attorney and legal fees, and then subtracting the value of the Property, which it found to be $316,000.00. *Id.* at 23-25. The Deasons now appeal.

## Discussion and Decision

When a trial court has made findings of fact, we review the sufficiency of the evidence using a two-step process. *Huber v. Sering*, 867 N.E.2d 698, 706 (Ind. Ct. App. 2007), *trans. denied*. We first determine whether the evidence supports the trial court's findings of fact, and then we determine whether those findings of fact support the trial court's conclusions of law. *Id.* We will set aside the

findings only if they are clearly erroneous. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Campbell v. Campbell*, 993 N.E.2d 205, 209 (Ind. Ct. App. 2013), *trans. denied.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* In applying this standard, we neither reweigh the evidence nor judge the credibility of the witnesses. *Merrillville 2548, Inc. v. BMO Harris Bank N.A.*, 39 N.E.3d 382, 389 (Ind. Ct. App. 2015), *trans. denied.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.* To make a determination that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Kieffer v. Trockman*, 56 N.E.3d 27, 33 (Ind. Ct. App. 2016).

[8] The Deasons argue that the trial court's order was clearly erroneous because it awarded the Trust both forfeiture and foreclosure remedies. They contend that the Trust, through its actions after the Deasons defaulted on the Contract, elected a remedy of forfeiture, which was the remedy warranted by the language in the Contract. They also assert that because the Trust elected a forfeiture remedy, it was barred from also seeking a remedy of foreclosure, and the trial court clearly erred when it allowed the Trust to be awarded both forfeiture and a deficiency judgment.

[9] In *Skendzel v. Marshall*, 261 Ind. 226, 301 N.E.2d 641 (1973), *cert. denied*, 415 U.S. 921 (1974), our Supreme Court held that in all but a few specific instances, the proper relief to be granted a vendor upon the vendee's material breach of a

land sale contract is a judgment of foreclosure pursuant to Indiana Trial Rule 69(C). 261 Ind. at 240, 301 N.E.2d at 650. "Upon foreclosure, the vendee retains a vendee's lien upon the sale, and once the balance owed under the contract has been paid to the vendor, the vendee may retain the proceeds from the sale." *McLemore v. McLemore*, 827 N.E.2d 1135, 1143 (Ind. Ct. App. 2005). "If the foreclosure does not net a sufficient amount to satisfy the vendor's remaining security interest in the property, a damage judgment for waste caused by the vendee equivalent to the amount recoverable by a mortgagee as a deficiency judgment would be appropriate." *Id.* Forfeiture divests property without compensation; in other words, forfeiture terminates an existing contract without restitution. *Hooker v. Norbu*, 899 N.E.2d 655, 658 (Ind. Ct. App. 2008), *trans. denied.* A vendor who has obtained the remedy of forfeiture may cancel the contract, retain the payments made, retain the real estate, and recoup actual damages sustained as a result of the transaction. *Id.* at 659. Forfeiture may be considered an appropriate remedy in limited circumstances, that is, (1) an abandoning or absconding vendee or (2) where the vendee has paid a minimal amount and the vendor's security interest in the property has been jeopardized by the acts or omissions of the vendee. *McLemore*, 827 N.E.2d at 1140.

[10] Here, the Deasons entered into the Contract with the Trust, paid a down payment and earnest money and, over the course of three years, made a total of thirty-seven installment payments of $2,923.31 each, totaling $108,162.47. On April 18, 2012, the remaining balance was due in one single balloon payment, but the Deasons were unable to make the balloon payment, and instead,

tendered a regular monthly payment, which breached the Contract. McWhorter testified that the Deasons never told him that they would be leaving, but that he told the Deasons "[W]e have to live by what's in the [C]ontract." *Tr. Vol. 2* at 119. The Deasons testified that McWhorter told them to leave the premises by May 18, 2012. *Id*. at 136-37. The Trust took possession of the Property shortly after the Deasons left around May 18, 2012 and had the locks changed, and McWhorter began living in the home. *Id*. at 59, 121. Neither party pursued any obligation on the Contract thereafter. On May 27, 2015, more than three years after taking possession of the Property, the Trust filed a complaint against the Deasons seeking foreclosure and a judgment consisting of "the outstanding unpaid principal balance, together with interest from and after the date of the default, late charges, default-related expenses and advances, reasonable attorney fees and costs of this action, and all other expenses incurred in connection with this cause." *Appellants' App. Vol. 2* at 28.

[11]   In its order granting judgment to the Trust, the trial court found that the Deasons breached the Contract. The trial court then entered judgment for the Trust for both forfeiture and a deficiency judgment under foreclosure. In its order, the trial court allowed the Trust to retain title to the Property and continue possession of the Property and awarded judgment in the amount of $153,335.24 as a deficiency judgment. Although the order purported to grant the Trust's request for foreclosure, no sheriff's sale, or any sale, of the Property was ordered.

[12] The Deasons do not challenge the trial court's finding that they breached the Contract. They only take issue with the remedies granted by the trial court. In contesting the award of both a forfeiture remedy and a foreclosure remedy, the Deasons rely on *Powers v. Ford*, 415 N.E.2d 734 (Ind. Ct. App. 1981), where a panel of this court reiterated the general rule that, "one may not forfeit a contract and thereafter expect to enforce it." *Id*. at 737. Accordingly, pursuant to that case, once a land contract seller has taken possession of the subject property pursuant to a forfeiture, he has elected his remedy and is no longer entitled to seek foreclosure and a deficiency judgment. *Id*.

[13] In the present case, although no formalities were taken to initiate a forfeiture at the time the Deasons defaulted on the Contract, the actions taken by the Trust indicate that a forfeiture did, in fact, occur. When the Deasons defaulted on the Contract, they relinquished possession of the Property, and the Trust took almost immediate possession of the Property with McWhorter residing on the Property consistently until the date of the trial. At the time of the Deasons' breach of the Contract, they had paid only about 4% of the total purchase price, and after the breach, neither party attempted to perform anything further under the Contract, which shows an intent to cancel the Contract. Not until over three years after the Deasons' breach of the Contract, did the Trust seek a foreclosure of the Property. Therefore, the record indicates that the Trust elected to pursue a forfeiture at the time of the breach of the Contract, which cancelled the Contract, and pursuant to *Powers*, the Trust was no longer entitled

to seek a foreclosure and a deficiency judgment, which would hold the Deasons further liable on the Contract.

[14]     The language of the Contract further supports this outcome. Paragraph 16 provided in pertinent part:

> In the event that the BUYERS shall fail to perform any of the acts or fail to make any of the payments required by this contract, promptly and at the time stipulated, then, after thirty (30) days, if the defaults are not completely corrected, including the current payments due, and *if the BUYERS have not paid twenty-five percent (25%) or more of the principal of the original purchase price, all payments made hereunder prior to such default shall be retained by the SELLERS as and for damages for the use and occupancy of the premises to the date of default and SELLERS shall thereupon be relieved from all liability hereunder to the BUYERS.* Immediately upon such thirty (30) day default, and without demand or notice, the BUYERS agree that they will surrender to the SELLERS peaceable and immediate possession of said premises together with all improvements thereon.

*Appellants' App. Vol. 2* at 62 (emphasis added). Pursuant to this language, when the buyers default on any performance under the Contract and do not correct the default within thirty days and have paid less than 25% of the principal, the Contract is cancelled, and the sellers retain all of the prior payments as damages for use and occupancy of the property and the buyers must surrender possession of the property. This provision addresses what occurred here. In April 2012, the Deasons contacted McWhorter and informed him that they would be unable to make the balloon payment that was due under the Contract. Within thirty days of this breach of the Contract, the Deasons relinquished possession

of the Property, and McWhorter took possession of the Property and began residing on the Property shortly thereafter. At no time after the breach did either party pursue any further action under the Contract, and both parties proceeded as if the Contract had been cancelled. Further, at the time of the Deasons' default under the Contract, they had paid approximately 4% of the purchase price of the Property, far less than the 25% threshold. Thus, under the Contract's language, a forfeiture was the proper course where, as here, the Deasons had paid less than 25% of the principal when they defaulted.

[15] Although the trial court found that the Contract allowed the Trust to proceed with a foreclosure even when forfeiture may have been an acceptable remedy, we do not believe that the Contract actually allows for such a choice. *See id*. at 21. The Contract states:

> In the event of such default and the failure of BUYERS to surrender possession of said real estate as above provided, the SELLERS may proceed in any action at law or in equity for the possession of said real estate and for damages for the withholding thereof, and for waste or damage done thereto.

*Id*. at 62. Pursuant to this language, the seller may only "proceed in any action at law or in equity" if the buyers defaulted on the Contract *and* failed to surrender possession of the Property. In the present case, even though the Deasons did default on their performance under the Contract, the record does not establish that they also failed to surrender possession of the Property. Rather, the record shows that within thirty days of their breach of the Contract, the Deasons relinquished possession of the Property to McWhorter.

We, therefore, conclude that, in the present case, the record established that, after the Deasons defaulted, the Trust elected a forfeiture remedy and was no longer entitled to pursue a foreclosure remedy and a deficiency judgment as it did. Likewise, under the language of the Contract, the forfeiture was the proper remedy to pursue as, at the time of their default, the Deasons had only paid 4% of the purchase price. The trial court erred when it entered judgment in favor of the Trust under a remedy of foreclosure and awarded it a deficiency judgment. We reverse and remand for a recalculation of the damages award.

Reversed and remanded.

Vaidik, C.J., and Riley, J., concur.